**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OLYMPIAN GROUP LLC, d/b/a ENCORE, | ) | |
| COREY BRADFORD and MICHAEL IRVIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 18 CV 04919 |
| | ) | |
| CITY OF MARKHAM, an Illinois municipal | ) | Judge Andrea Wood |
| corporation, ROGER AGPAWA, individually | ) | |
| and in his official capacity as Mayor of the City of | ) | Magistrate Judge Gilbert |
| Markham, DAVID WEBB, individually, STEVE R. | ) | |
| MILLER, individually, CLIFTON HOWARD, | ) | |
| individually, RONDAL JONES, individually, | ) | |
| WILLIAM BARRON, individually, MACK | ) | |
| SANDERS, individually and in his official capacity | ) | |
| as Chief of Police, DEPUTY CHIEF JAMES | ) | |
| WALKER, individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1)&(6)**

Defendants, **CITY OF MARKHAM**, an Illinois municipal corporation (the "City"),
**DAVID WEBB**, individually ("Webb"), **STEVE R. MILLER**, individually ("Attorney
Miller"), **CLIFTON HOWARD**, individually ("Alderman Howard"), **RONDAL JONES**,
individually ("Alderman Jones"), **WILLIAM BARRON**, individually ("Alderman Barron"),
**MACK SANDERS**, individually and in his official capacity of chief of Police ("Chief
Sanders"), **DEPUTY CHIEF JAMES WALKER**, individually and in his official capacity
("D.C. Walker"), through their attorneys, SMITHAMUNDSEN LLC, pursuant to Fed. R. Civ. P.
12(b)(1) and 12(b)(6), move this Honorable Court to dismiss all counts of Plaintiffs' Second
Amended Complaint at Law ("Second Amended Complaint") with prejudice. In support,
Defendants state as follows:

## INTRODUCTION

Plaintiffs, OLYMPIAN GROUP LLC d/b/a ENCORE ("Encore"), COREY BRADFORD ("Bradford") and MICHAEL IRVIN ("Irvin")[1] (collectively, "Plaintiffs") filed their Amended Complaint on September 27, 2018. Plaintiffs seek relief pursuant to 42 U.S.C. §1983 (**Counts I, II, III, IV, VI**), pursuant to 42 U.S.C. §1985(3) (**Count V**), declaratory and injunctive relief (**Count VII**) and various state law claims.

Against the "Individual Defendants,"[2] Plaintiffs bring claims for violations of procedural due process (**Count I**), equal protection of the fourteenth amendment (**Count II**), first amendment (**Count III**), fourth amendment (**Count IV**), conspiracy to deprive Plaintiffs of equal protection (**Count V**) and state-law claims of negligent interference with a business relationship (**Count X**),[3] extortion (**Count XI**) and trespass to land (**Count XII**). Plaintiffs also assert a separate state-law claim of Conversion against Former Mayors Blevins and Webb (**Count VIII**)[4]. Against the City, Plaintiffs assert a *Monell* claim (**Count VI**) and seek declaratory and injunctive relief (**Count VII**).[5]

In their Second Amended Complaint, Plaintiffs concoct a colorful tale of a conspiracy and political intrigue through which the City and certain of its representatives and employees all conspired to shut down Olympian by issuing fines for violations of the City's liquor license laws and police presence at their establishment. However, the Second Amended Complaint does not state any claim upon which relief can be granted by this Court. Plaintiffs fail to identify any constitutionally protected property or liberty interest in support of their claims. Additionally,

---

[1] Bradford and Irvin are, at times, collectively referred to as "Individual Plaintiffs."
[2] All Counts (save Counts VII and VIII) are lodged against an undefined group of "Individual Defendants" in violation of FRCP 8(a).
[3] Plaintiff's Amended Complaint does not contain a Count IX.
[4] Former Mayor Blevins is not a named party in Plaintiff's Second Amended Complaint and is now deceased, although Count VIII is directed at him, for purposes of the instant motion Defendants will treat this as a clerical error by Plaintiff.
[5] The City is also named as a defendant in the state law claim for conversation (Count VIII).

state and local laws provided Plaintiffs with adequate procedures and remedies to pursue their claims, and Plaintiffs failed to properly avail themselves of such procedures. For these and the additional reasons addressed below, this Court should grant Defendants' Motion with respect to Plaintiffs' so called federal claims, which fail to present a federal question and decline to exercise supplemental jurisdiction over the remaining state-law claims.

## MATERIAL ALLEGATIONS

The following facts are drawn from the Amended Complaint and are taken as true only for purposes of Defendants' Rule 12(b)(6) Motion:

Olympian opened in 2012.[6] Scnd. Am. Compl. at ¶15[7]. The Plaintiff is a retail establishment authorized to sell alcoholic liquor and is located at 2024 W. 163rd Street, Suite 11, in Markham, Illinois. *Id.* at ¶¶1, 53. Bradford is a member/manager of Olympian. *Id.* at ¶2. Irvin is a member. *Id.* at ¶3. From January 21, 2013 to December 4, 2017, Defendants allegedly issued thirty-seven (37) "false and fictitious" citations to Olympian for alleged violations of its business license "and other Ordinances of the City of Markham." *Id.* at ¶30.

Roger Agpawa is the current Mayor and Liquor Control Commissioner of the City "at all times relevant to the complaint." *Id.* at ¶5. Webb was the Mayor and Liquor Control Commissioner of the City "at all times relevant times to the complaint."[8] *Id.* at ¶6. Miller was the Attorney for the City. As alleged, Miller became the "de facto" final decision and policy-maker for the City after Webb was indicted. *Id.* at ¶7 *but see id.* at ¶100 ("At all times relevant, ***the***

---

[6] As discussed below, the vast majority of the Second Amended Complaint uses "plaintiff" and "Olympian" and "plaintiffs" interchangeably and inconsistently (further obfuscating the issues before this Court). For purposes of this section, Defendants mirror the label used by Plaintiffs in their Second Amended Complaint.

[7] It should be noted at the onset that the Second Amended Complaint stops its sequential paragraph numbering at 68 and goes back to 67 when beginning the "Counts," creating two different paragraphs 67 and 68, Defendants will try their best to provide clarity to the Court when referencing these paragraphs.

[8] That both Agpawa and Webb are alleged to be the Mayor and Liquor Control Commissioner "at all relevant times" is just one of many examples of the Amended Complaint's contradictory, confusing and vague allegations which leave all Defendants left to guess what it is Plaintiffs are trying to allege.

*individual Defendants* were final policymakers and had final policymaking authority for the City of Markham")(emphasis added.) Howard, Jones and Barron were Aldermen for the City. *Id*. at ¶¶8-10. Sanders was chief of police. *Id*. at ¶11. Walker was a law enforcement officer. *Id*. at ¶12.

On May 4, 2017, Olympian was issued a "Class A" liquor license.[9] *Id*. at ¶¶22-23. Prior to (but on the date of) its expiration, the City told Bradford that Plaintiff would need to pay $33,050.00 (fines, fees and expenses) in certified funds by close of business or Plaintiff's would be closed for business. *Id*. at ¶¶48, 116. Plaintiffs tendered the payment to the City on May 4, 2018 (four days after its liquor license expired). *Id*. at ¶¶49-50. Later that day, Plaintiff paid $5,000.00 for a 4am liquor license, but Defendants instead issued a "fraudulent" 2am license.[10] *Id*. at ¶51-52.

Plaintiffs have ceased selling liquor at 2am.[11] Defendants continue to issue citations under allegedly false pretenses involving the sale of liquor after hours and capacity violations, continuing the pattern of harassment and in furtherance of the intent to shut down Olympian. *Id*. at ¶57.

From December 2017 through April 2018, Defendants Miller, Blevins, Howard, Jones, Barron, Sanders and Walker, allegedly initiated a new campaign to drive the Plaintiffs out of business. *Id*. at ¶46. Chief Sanders and Officer Walker, at the direction of Defendants Webb, Blevins and Howard, began to direct members of the Markham Police Department to issue citations, without regard to their truth or veracity, in order to deny the Plaintiffs a license renewal. *Id*. at ¶47. Plaintiffs allegedly were subjected to acts of intimidation, coercion and threatened with imprisonment for the sole purpose of forcing the Plaintiff to close the business.

---

[9] It was set to expire on April 30, 2018. *Id*. at ¶49.
[10] The cost for a 4am license is the same as a 2am license. *Id*. at ¶55.
[11] Per Ordinance 18-O-2200 and its predecessor, Olympian was (and is) prohibited from remaining open during hours which sale of liquor is prohibited. Plaintiffs do not allege they stopped selling liquor *and closed* by 2am.

*Id*. at ¶58. From May 2018 to September 2018, Walker and Sanders directed members of the police department to enter the Plaintiffs business and prevent patrons from entering. *Id*. at ¶63-64.

**MARKHAM'S LIQUOR LICENSE LAWS**[12]

On **June 19, 1996**, the City of Markham passed and enacted Ordinance 96-O-1579, making it unlawful to sell any alcoholic liquor in the City of Markham without having a retail liquor dealer's license. **Group Exhibit A** at Ex. A. Ordinance 90-O-1579 further established the eligibility, procedure and requirements for obtaining a retail liquor dealer's license. Section 118(E) – Closing Hours, specifies:

> [I]t shall be unlawful to keep open for business or to admit the public to remain within, or to permit the consumption of alcohol liquor in or upon any premises in which alcoholic liquor is sold at retail during the hours within which the sale of such liquor is prohibited; provided, that in the case of clubs, restaurants, motels and hotels, such establishments may be kept open for business during such hours, but no alcohol liquor may be sold to, or consumed by, the public during such hours.

City of Markham Ordinance 96-O-1579 is the last comprehensive liquor Ordinance prior to the passage of Ordinance 18-O-2200 on May 2, 2018 ("An Ordinance Amending Title XI, Chapter 112 of The Markham Code of Ordinances and Ordinance 96-O-1579").

On **April 2, 2008**, the City of Markham passed and enacted Ordinance 08-O-1911, amending the business license categories and fees. Pursuant to Section 3, of Ordinance 08-O-1911:

---

[12] The relevant City of Markham Liquor Ordinances are attached as **GROUP EXHIBIT A**.

> The water account must be current and all monies owed to the City of Markham
> against the place of operation must be current prior to a business license being
> issued.

City of Markham Ordinance 08-O-1911 has not been repealed.

On **March 7, 2012**, the City of Markham passed and enacted Ordinance **12-O-2012**, amending Ordinance 96-O-1579. **Group Exhibit A** at Ex. C. Ordinance 12-O-2012 established the penalties for violating the City of Markham's licensing and regulations concerning the sale at retail of alcoholic liquor. Ordinance 12-O-2012, imposed a $1,000 limit for a first violation with a twelve (12) month period, $1,500 for the second violation within a twelve (12) month period, and $2,500.00 for the third or subsequent violation within a twelve (12) month period. A separate violation shall be deemed committed on each day during or on which a violation occurs or continues. Not more than $15,000.00 in fines under this Section may be imposed against any licensee during the period of his or her license. The revocation of a license issued hereunder shall not preclude the assessment of a fine for a violation of any provision of this ordinance."

City of Markham Ordinance 12-O-2012 has not been repealed.

On **October 19, 2016**, the City of Markham passed and enacted **Ordinance 16-O-2149**, amending Ordinance 96-O-1579, Ordinance 16-O-2138, and Ordinance 16-O-2147, concerning the Classification of liquor licenses, regulating the hours of operations of business selling liquor and the fee for each class of license. **Group Exhibit A** at Ex. D. Section 1 (A) reclassified the "Class A" into a two separate categories[13] – "Class A(1)" and "Class A(2)". Business owners issued a "Class A(2)" license were authorized to:

---

[13] One week prior to enactment, on October 11, 2016, Corey Irvin appeared at the Special Meeting of Markham City Council and requested that he be "grandfathered" in (i.e., asked to keep his Class "A" license). Attorney Miller stated that the City would not be grandfathering in businesses at that particular time. (See Meeting Minutes, October 11, 2016).

6

> sale at retail of alcohol liquor to be consumed on the specified premises with a capacity of more than 200 persons as determined by the Markham Fire Department until 2:00 a.m. and shall authorize the furnishing of entertainment on said premises. The annual fee for such license shall be $5,000.00.

City of Markham Ordinance 16-O-2149 has not been repealed.

On **February 1, 2017**, the City of Markham passed and enacted **Ordinance 17-O-2163**, amending Ordinance 96-O-1579, Ordinance 16-O-2138, Ordinance 16-O-2147, and 16-O-2149 concerning the Classification of liquor licenses, regulating the hours of operations of business selling liquor and the fee for each class of license. **Group Exhibit A** at Ex. E. Section 1 (A) reclassified the "Class A" into a two separate categories – "Class A(1)" and "Class A(2)". Business owners issued a "Class A(2)" license were authorized to:

> sale at retail of alcohol liquor to be consumed on the specified premises with a capacity of more than 200 persons as determined by the Markham Fire Department. Alcohol liquor shall only be sold Monday through Saturday between the hours of 7:00 p.m. and 2:00 p.m. and Sunday between the hours of 12:00 p.m. and 2:00 a.m. and shall authorize the furnishing of entertainment on said premises. The annual fee for such license shall be $5,000.00.

City of Markham Ordinance 16-O-2163 has not been repealed.

On **September 6, 2017**, the City of Markham passed and enacted Ordinance 17-O-2186 amending Ordinance 96-O-1579, restricting the number of liquor licenses that may be issued by the City of Markham and other new restrictions on licenses. **Group Exhibit A** at Ex. F. In accordance with Ordinance 17-O-2186, the City of Markham is permitted to issue four (4) "Class A(1)" liquor licenses and two (2) "Class A(2)" liquor licenses.

City of Markham Ordinance 17-O-2186 has not been repealed.

On **May 2, 2018**, City of Markham enacted Ordinance 18-O-2200 ("An Ordinance Amending Title XI, Chapter 112 of The Markham Code of Ordinances and Ordinance 96-O-1579"). **Group Exhibit A** at Ex. G. The last comprehensive liquor ordinance prior to the passage of Ordinance 18-O-2200 was Ordinance 96-2579 ("An Ordinance Licensing and Regulating the Sale at Retail of Alcoholic Liquor in the City of Markham, Cook County, Illinois"). Section 106 of both Ordinance 96-2579 and 18-O-2200 authorizes the Commissioner to "enter, or to authorize any law enforcing official to enter, at any time upon any premises licensed hereunder to determine whether any of the provisions of this ordinance are being violated and at such time to examine said premises of said licensee."

In May 1, 2016, Olympian Group d/b/a Billboards was issued a "Class A" liquor license.[14] Prior to the October 11, 2016 passage of Ordinance 16-O-2147 (eliminating the "Class A" license and creating "Class A(1) and Class A(2)," the City of Markham City Council held an open meeting regarding, and to vote on, the adoption of Ordinance 16-O-2147. The Minutes from the October meeting (of which this Court may take judicial notice) are attached as **Exhibit D**.[15] Bradford, who was at the meeting, requested that his business be "grandfathered in at the old ordinance." *Id*. At that time, Bradford was told that grandfathering in is not being considered and that the ultimate goal is to keep everyone protected and safe." *Id*.

On December 7, 2017, the City of Markham Liquor Control Commissioner ("MLCC") served Bradford, as owner/president of Olympian Group LLC d/b/a Encore, with a notice of Hearing before the MLCC scheduled for December 13, 2017 at 12:00 noon related to violations

---

[14] The exhibits attached to Plaintiffs' initial Complaint and which are integral to Plaintiffs' Second Amended Complaint are attached to Defendants' Motion as **GROUP EXHIBIT B**.

[15] *See e.g. Roller v. Board of Educ. of Glen Ellyn School Dist.*, 2006 WL 200886, *4 (N.D. Ill. 2006) (judicial notice of minutes).

of State of Illinois and City of Markham Liquor Laws.[16] *Id*. Per the Notice, the hearing was in response to a December 2, 2017 incident wherein the City of Markham Police Department responded to a multiple-shot incident at Olympian, resulting in one person being shot by someone at 2:30 a.m. while Olympian's business was still operating. *Id*. Following the hearing, the MLCC – after hearing argument and testimony and reviewing issues, law, evidence, testimony and issues presented by the City and Olympian Group d/b/a Encore and made findings of fact, including: Encore was open and operating on December 2, 2017 for the purpose of selling liquor to the public while displaying a "Class A" license in the name of Olympian Group, LLC d/b/a Billboard; Encore had Class A(2) license to sell liquor to the public until 2:00am; and Encore continued to operate after 2:00am in violation of the applicable ordinances. *Id*. The MLCC made conclusions of law, including: Encore was open and operating for the purpose of selling at retail liquor to the public after 2:00 a.m. and, as a result, violated the City's ordinances governing closing times of A(2) license holders. *Id*. The MLCC found that the evidence supports certain fines for violating Ordinance 17-O-2163 and that the suspension of Encore's liquor license shall terminate upon payment of both fines, removal of the "Class A" liquor license in the name of Olympian Group d/b/a Billboard issued in May 2017, and posting of the "Class A(2)" license in the name of Olympian Group d/b/a Encore. *Id*.

## ARGUMENT

### A.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO SATISFY FRCP 8(A)

Although the Amended Complaint is somewhat prolix, Plaintiffs fail to coherently allege who did what (and to whom), and the Amended Complaint's needless complexities and

---

[16] The MLCC documentation, including the Notice, Complaint and Written Decision, are attached as **GROUP EXHIBIT C**.

irrelevancies deprive Defendants of fair notice of the claims Plaintiffs seek to assert. Dismissal is warranted on this basis alone.

For example, Plaintiffs use the terms "Plaintiff" or "Plaintiffs" or "Olympian" interchangeably and inconsistently, with no apparent rhyme or reason. Plaintiffs' Amended Complaint also lumps together "Plaintiffs" (and "Defendants") without stating to *which* Plaintiff and Defendant each allegation refers. *See e.g.* Scnd. Am. Compl. at ¶23 ("Defendants began their crusade to run ***Plaintiff*** out of business by issuing as many citations as possible for ***Plaintiffs*** allege violations")(emphasis added), at ¶50 (***Plaintiffs*** tendered $33,050.00 to the City of Markham on May 4, 2018)(emphasis added), at ¶67 of "Facts" section (***Plaintiff*** was denied any meaningful and timely review of the arbitrary actions), at ¶51 ("***Plaintiff*** paid $5,000 for a 4am license")(emphasis added), at ¶52 ("Defendants issued ***Plaintiffs*** a fraudulent 2am liquor license")(emphasis added), at ¶108 ("Defendants…issued ***Olympian*** a 2am license"), at ¶62 ("The ***Plaintiff*** requested an opportunity to be heard on the status of its license")(emphasis added) and at ¶69 ("Defendants infringed on the ***Plaintiffs'*** liberty interests in conducting and running a lawful business").

By failing to distinguish between and "Plaintiffs" and "Individual Defendants," **all defendants are prejudiced in guessing who did what to whom.** Moreover, each of the Individual Defendants may have different defenses available to them depending on to whom each allegation applies. As such, Plaintiffs fail to state any claim upon which relief can be granted under the minimal pleading standard.

The Second Amended Complaint alleges that "on May 1 of each year between 2013 and 2016, Olympian was issued a 4am license."[17] *Id*. at ¶20. Plaintiffs' portrayal of their liquor license history is both vague and nonsensical when compared to the exhibits attached to their

---

[17] As defined in the Second Amended Complaint, Olympian means Olympian Group, LLC d/b/a Encore. *Id*. at ¶1

initial Complaint (all of which are integral to all of their claims). *See* **Group Ex. B** (2012-2013 liquor license issued to Olympian Group, LLC d/b/a Billboard; same for 2013-2014; same for 2016-2017)[18] and *Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

## B.   INDIVIDUAL PLAINTIFFS LACK STANDING PURSUANT TO FRCP 17(A)

Bradford and Irvin lack standing to bring their §1983 and 1985(3) claims. Rule 17(a) "is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who, according to the governing substantive law, is entitled to enforce the right." *Rawoof v. Texor Petrol. Co.,* 521 F.3d 750, 756 (7th Cir.2008) (internal quotation marks omitted).

A corporate shareholder of a corporation (or an owner/member of an LLC) does not have a right of action to sue for injuries that are actually suffered by the entity and only derivatively by the individual. *See Peterson v. Vill. Of Downers Grove*, 2015 WL 1929737, at *8 (N.D. Ill Apr. 27, 2015). This rule applies to LLCs. *Compare* 805 ILCS 180/1-30 *and* 805 ILCS 5/3.10 (providing both LLCs and corporations the power "to sue and be sued, complain and defend" in their own name). The limitation on corporate standing applies specifically to §1983 and §1985. *See e.g. Sawmill Prod., Inc. v. Town of Cicero, Cook Cty., Ill*., 477 F. Supp. 636 (N.D. Ill. 1979).

Here, the gravamen of Plaintiffs' Second Amended Complaint is Defendants' alleged issuance of "false and fraudulent" citations to Olympian for the purpose of putting Olympian out of business. *See e.g.* Am. Compl. at ¶23 ("Defendants began their crusade to run Plaintiff out of business"), at ¶31 ("City of Markham issued Olympian 28 false and fictitious citations for

---

[18] *See* Group **Exhibit C** at Decision of the MLCC ("Encore was open and operating on December 2, 2017 … while displaying a "Class A" license in the name of Olympian Group, LLC d/b/a Billboard), *id*. ("Encore continued to operate  after 2:00 a.m. in violation of [Markham Ordinances]"), and *id*. ("The suspension of Encore's license shall terminate upon payment of [the] fines [and] **removal of the "Class" A license in the name of Olympian Group, LLC d/b/a *Billboard* issued on May 2017 and posting of the Class A(2) license in the name of Olympian Group, LLC d/b/a *Encore***")(emphasis added.)

alleged violations for selling liquor after-hours in spite of Olympian's Class 'A' i.e. 4:00 a.m. liquor license"), at ¶73 ("Defendants have engaged in a pattern of abuse, harassment and unlawful conduct in order to serve its motive to shut down Olympian"), at ¶82 ("Upon reliance of its receipt of a 4am license, Olympian's position changed and it incurred substantial expenditures as a result"), at ¶88 ("Defendants have willfully and wantonly searched Olympian and seized its property"), at ¶97 ("The purpose of the conspiracy…was motivated by their intention to close Olympian") and at ¶122 ("Olympian has lost benefits from the contract and has incurred added costs in performing the contract"). On its face, the Second Amended Complaint alleges no injury to the Individual Plaintiffs separate and apart from Olympian. Any injury the Individual Plaintiffs suffered was derivative and, therefore, this Court should dismiss the Individual Plaintiffs out of this case for want of standing.

## C.      PLAINTIFFS CASE IS NOT RIPE FOR ADJUDICATION

The bulk of Plaintiffs' allegations and theories of liability stem from the business and liquor licenses issued by the City to Olympian. At the time of filing this memorandum and companion motion to dismiss the business and liquor licenses for Olympian are still active and subject to administrative hearings in front of the MLCC from citations issued related to violations of local ordinances. *See* **Group Ex. E.** (Citations, Orders and Notices of Hearing for Olympian at MLCC)

In general, Article III of the Constitution restricts the jurisdiction of federal courts to "cases or controversies," and prohibits such courts from issuing advisory opinions. *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir.1992) (citing *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir.1984)). Implicit in these requirements is the doctrine of ripeness, which provides generally that federal courts may not adjudicate cases where "the

12

parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Id*. See also *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir.2004) (explaining that the ripeness doctrine stems from "the ... central perception ... that courts should not render decisions absent a genuine need to resolve a real dispute."). The ripeness doctrine has both a constitutional component based on Article III and a prudential component based on the discretionary power of a court to refuse review for policy concerns. See *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).

Essentially Plaintiffs are trying to circumvent the jurisdiction of the MLCC by initiating this suit. Simultaneously Plaintiffs allege they are being deprived of due process, to be addressed hereinafter, yet have outstanding litigation which cannot be fairly characterized as a lack of process. Therefore, this Court should dismiss this suit in its entirety for not being ripe for adjudication at this point in time.

## D.    EQUAL PROTECTION §1983 (COUNT II)

The Equal Protection Clause prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1041 (N.D. Ill. 2018). Here, Plaintiffs do not allege a protected class; rather, they seem to proceed under the latter theory. **At the pleadings stage, "all it takes to defeat a class-of-one claim is a conceivable rationale basis for the difference in treatment**." *Dyson v. City of Calumet City*, No. 16 C 11509, at *8 (N.D. Ill. Jan. 23, 2018)(emphasis added.)

Plaintiffs equal protection claim is doomed by their failure to negate a conceivable rational basis for the adverse conduct at the heart of Plaintiffs' claims. *See Dyson*, No. 16 C 11509, at *4 (dismissing class-of-one claim pursuant to 12(b)(6), recognizing that "Government

abuse may be one possible explanation for what happened, **but it certainly is not the only one**")(emphasis added.)

Like the plaintiff in *Dyson*, Plaintiffs fail to negate a rational basis for the adverse conduct which forms the basis of Plaintiffs' action. For example, Plaintiffs do not negate the possibility that **there were no available 4am licenses at the time they applied for a license on May 4, 2018**. In fact, Plaintiffs do not even mention the Ordinance restricting the number of Class A(1) i.e. 4am liquor licenses. By not mentioning the restriction on the number of 4am licenses, Plaintiffs did not – and could not – negate the possibility that there were no more available 4am liquor licenses at the time they think they applied for one. *See* Scnd. Am. Compl. at ¶51.

Here, not only do Plaintiffs fail to negate a rational basis for the adverse conduct which forms the basis of Plaintiffs' action, they actually plead themselves out of court by pleading specific rational bases for the actions of the Individual Defendants. *See e.g.* at ¶42 (conceding that Plaintiffs protested, rather than complied, when they were given a list of additional requirements) and ¶¶22-23 (Plaintiffs alleging they were granted a category of liquor license at a time when Plaintiffs knew no such liquor license existed).

As a matter of law, Plaintiffs' allegations do not *and never will* fit the carefully-defined boundaries for class-of-one claims and, therefore, the Court should dismiss their class-of-one claim with prejudice.

E.     **CONSPIRACY §1985 (COUNT V)**

Plaintiffs allege a conspiracy pursuant to §1985(3), claiming Defendants combined and conspired with one another in a scheme to deprive Plaintiffs of their constitutional right to equal protection of the laws. *Id*. at ¶92. Plaintiffs further allege Defendants acted in furtherance of this

conspiracy by: (i) threatening to close Olympian in violation of and absolute disregard for a court order; (ii) abusing their position of authority to engage in a pattern of harassment; and (iii) issuing citations for alleged violations of Olympian's business and liquor licenses in furtherance of their intention to shut down Olympian. *Id*. at ¶¶92-93). Defendants allegedly "singled out the Plaintiff and arbitrarily applied and enforced applicable laws, rules, and regulations against the Plaintiff which[,] caused Plaintiff substantial monetary damage." *Id*. at ¶95.

However, even if true, Plaintiffs' allegations – at most – implicate a nonracial, political conspiracy which does not trigger §1985(3). *See Allen v. City of Chicago*, 828 F. Supp. 543, 564 (N.D. Ill. 1993)("**The Seventh Circuit has explicitly held that conspiracy claims brought pursuant to §1985(3) do not reach nonracial, political conspiracies**")(emphasis added.) Plaintiffs have not alleged any sort of race-based or "invidiously discriminatory" action by any Defendants. In fact, there is no mention of race, religion, ethnicity or any other protected class in the Second Amended Complaint. There is no allegation or indication that any of these factors motivated the actions of any Defendant.

Had Plaintiffs adequately alleged the elements of conspiracy, the intra-corporate conspiracy doctrine would still bar their claims. **The Seventh Circuit has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees**. *Allen*, 828 F. Supp. at 564. The intra-corporation conspiracy doctrine applies equally to public and private entities, and all employees of a city are part of the same "municipal corporation." *Id*. Accordingly, because it is undisputed that all of Individual Defendants are officials, employees or agents (i.e., the same "municipal corporation," Plaintiffs cannot sustain their claim under §1985(3). *See* Scnd. Am. Compl. at ¶¶4-12.

15

As a third and independent basis for dismissal, Plaintiffs' conspiracy claim fails because there is no underlying constitutional claim. *Sow v. Fortville Police Dept.*, 636 F.3d 293, 305 (7th Cir. 2011) ("absence of any underlying violation of Plaintiff's rights precludes the possibility of…succeeding on a conspiracy claim."). Accordingly, this Court should dismiss Count V with prejudice.

## F.   PROCEDURAL DUE PROCESS §1983 (COUNT I)

The most liberal reading of Plaintiffs' Second Amended Complaint cannot save its fatal deficiencies. Plaintiffs' procedural due process claim consists of five paragraphs and, like all other Counts of the Second Amended Complaint, incorporates therein the first sixty-six (66) paragraphs without bothering to identify what factual allegations are relevant to it. Plaintiffs allege generally that "Defendants infringed on the Plaintiffs' liberty interests in conducting and running a lawful business" and that "[t]he deprivation of a constitutionally protected interest without due process is unconstitutional. *Id*. at ¶¶69-70. Plaintiffs claim they suffered "permanent and temporary injury" as a result of Defendants unspecified actions. *Id*. at ¶71.

To analyze a procedural due process claim under §1983, the Court must engage in a two-step analysis. The Court must determine whether: (1) the Plaintiffs have been deprived of a protected interest; and (2) if so, determine what process is due. *See Dyson*, 2018 WL 509961 at *10. Where a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

### a)   No Property or Liberty Interest

The death knell of Plaintiffs' procedural due process claim (and their other §1983 claims) is their inability to satisfy the threshold inquiry of a protectable property or liberty interest.

16

Plaintiffs Second Amended Complaint repeatedly alleges that Defendants "***attempt* to deprive**" Plaintiff of their right to run a lawful business. "Attempted violation of due process" is not a recognized cause of action under §1983, particularly where Plaintiffs concede they are, in fact, presently running their business. *Id.* at ¶¶30-53. Their inability to remain open an extra few hours does not implicate the due process clause as a matter of law. In *Iovinelli v. Pritchett*, the plaintiff claimed a liberty interest in "being immune from compulsory job assignments that are retaliatory and far beneath his earned rank and previous duties." *Iovinelli v. Pritchett*, No. 06 C 6404, 2008 WL 2705446, at *19 (N.D. Ill. July 9, 2008). The plaintiff in *Iovinelli* was not fired but instead alleged that he currently serves as part-time deputy chief of the River Grove Fire Department. The court dismissed the procedural due process claim because, under those facts, to find that the plaintiff has been deprived of his liberty of occupation would similarly stretch that right further than is justified under the law. *Id.*

Here, Plaintiffs do not want process; Plaintiffs want to stay open until 4am. To deem Plaintiffs' receipt of a 2am license (instead of the desired 4am license) a protectable liberty interest would require this Court to stretch beyond where the *Iovinelli* case rightly refused to go.

### b) Waiver

To the extent Plaintiffs' due process claim relies on citations and/or issuance of their liquor license, their claims must fail for several reasons. First, taking Plaintiffs' allegations as true, the City's mere demand for outstanding balance of $33,050.00 prior to issuance of a new liquor license is not a violation of Plaintiffs' due process rights. To the contrary, it was a demand for compliance with a straightforward Ordinance. **When Plaintiffs tendered the $33,050.00, Plaintiffs waived of any procedural due process claim they might have had regarding those fines and penalties**. *See e.g. Sapir v. City of Chicago*, 749 F. Supp. 187, 191 (N.D. Ill. 1990)

("by paying his ticket, fines and penalties, Hendricks deprived the City of the opportunity to provide him with due process, and he thereby waived his right to test the constitutionality of the City's enforcement procedures").

### c) Markham's Failure to Follow Rules Does Not Give Rise to Federal Due Process

Additionally, taking Plaintiffs' allegations as true, Plaintiffs received a "Class A" liquor license at a time when no such category of license existed. This is fatal to Plaintiffs' claim. *See, e.g., Dyson v. City of Calumet City*, 2018 WL 509961, at *10 (N.D. Ill. Jan. 23, 2018) ("**invalid when issued and could not have provided [them] with a property interest**"). Likewise, Defendants' failure to follow their own procedures for issuance of liquor licenses cannot give rise to a viable procedural due process claim. *See Dyson*, 2018 WL 509961, at *10 (dismissing procedural due process claim related to "City's improper issuance of building permit" because a "state or municipality's failure to follow its own rules does not give rise to a federal due process violation").

### d) Failure to Avail Themselves to Adequate Remedies Guaranteed By State Law

Plaintiffs' claim of procedural due process fails, as they do not allege they availed themselves of all remedies guaranteed by state law, or that those state remedies are inadequate. *Aida Food and Liquor, Inc. v. City of Chicago*, 2004 WL 7919663, *6 (N.D. Ill. 2004). Any grievance Plaintiffs had about their "fraudulent" liquor licenses or "fictitious" citations is a matter of local law in which Illinois provides adequate protection. *Id*. Plaintiffs failed to sufficiently allege the inadequacy of state law remedies or the exhaustion of administrative remedies. *Id*. at ¶67 (alleging, in conclusory fashion, Plaintiff was denied any meaningful and timely review of the arbitrary actions) and *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (conclusory allegations, such as plaintiff "has no adequate state law

remedy available to it to address this unlawful conduct," are insufficient"). Plaintiffs' procedural due process claim fails.

## G.    FIRST AMENDMENT (COUNT III)

Plaintiffs argue that they incurred "substantial expenditures" upon reliance of their application and issuance of a 4am. liquor license. *Id*. at ¶ 82. They do not allege what expenditures were made, when they were made or who made them. Indeed, Bradford knew no later than October 2016 that their business would not be grandfathered in. In their request for relief, they seek a "declaration that certain Markham ordinances are unconstitutional on its face and as applied." *Id*. at ¶85(a)). Having not bothered to point out which of the "certain Markham ordinances" are unconstitutional on their face, Defendants cannot begin to defend their facial validity or their application. Plaintiffs' First Amendment argument plausibly alleges nothing and is a distraction from the dispositive procedural backdrop of the case. Accordingly, this Court should dismiss Count III with prejudice.

## H.    FOURTH AMENDMENT (COUNT IV)

In violation of FRCP 8, Plaintiffs four-paragraph Count IV vaguely alleges that "Defendants have willfully and wantonly searched Olympian and seized its property" and that Plaintiff "suffered permanent and temporary injury" *Id*. at ¶¶86-89. Plaintiffs do not specify when the searches and/or seizures occurred, what property was allegedly searched and/or seized, or which Individual Defendant played a role in the unspecified conduct. To that end, it is impossible for Defendants to formulate a defense to Count IV.

## I.    DECLARATORY AND INJUNCTIVE RELIEF (COUNT VII)

Plaintiffs allege that the City has continued to "inconsistently and improperly use Ordinance 16-O-2147 as a means of citing and fining Olympian. *Id*. at ¶111. Plaintiffs seek a

declaration that "Plaintiffs' liquor license is valid" and that Ordinance 16-O-2147 is void as applied. *Id.* at ¶111(a)(b). If a litigant merely contends that one provision of the statute is unconstitutional as applied to his or her particular case, prior exhaustion of administrative remedies is required, and allegations of arbitrary or discriminatory application of ordinances first must be pursued before the administrative agency. *Oak Park Trust & Savings Bank v. Village of Palos Park, Cook County, Illinois*, 106 Ill.App.3d 394 (1st Dist. 1982). Plaintiffs failed to exhaust all applicable administrative remedies under the Liquor Control Act prior to seeking judicial review. *See Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate"). For these additional reasons, Plaintiffs' Second Amended Complaint must be dismissed pursuant to FRCP 12(b)(1) and 12(b)(6).

## J. VIOLATION OF *MONELL* (COUNT VI)

On one hand, *Monell* claims are not subject to any heightened pleading standard, and need only plead sufficient facts to put the municipality on notice of the crux of the *Monell* claims. *Baskins v. Gilmore*, No. 17 C 07566, 2018 WL 4699847, at *3 (N.D. Ill. Sept. 30, 2018). On the other hand, however, a plaintiff still must "provide some specific facts" to support his *Monell* claim and cannot simply rely on legal conclusions and conclusory allegations. *Id.*; *see McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011); *see also Elsayed v Vill of Schaumburg*, 2015 WL 1433071, at *5 (N.D. Ill. Mar 26, 2015) (complaint dismissed under 12(b)(6) where plaintiff's allegation of "widespread custom, practice and de facto policy of encouraging and permitting its police officers to make arrests without probable cause" as merely reciting the elements of a *Monell* claim is insufficient without sufficient associated facts").

The vagueness of Plaintiffs' *Monell* claim is, in and of itself, a basis to dismiss it. As alleged, "[a]t all times relevant, ***the individual Defendants*** were final policymakers and had final policymaking authority for the City of Markham." *Id*. at ¶100 (emphasis added.) Taking Plaintiffs' allegations as true, by alleging that *all* defendants had final decision-making authority, Plaintiffs have conceded that *all* Individual Defendants' conduct is subject to review.

### *Final Policymaker*

At best, Plaintiffs' have alleged that Webb, Miller and Blevins engaged in a bribery scheme during a time when they held various roles with the City. *Id*. at ¶101 (Webb engaged in an ongoing bribery scheme involving entities doing business in Markham) and at ¶37 (Blevins, with the knowledge of Miller, diverted thousands of dollars to his personal paycheck). However, the mere fact that a certain municipal officials or employees committed wrongs, such as bribery, at a time when they worked for the City, is not sufficient to allege a custom or practice by that municipality. If it were, *Monell* liability would accompany nearly every §1983 claim. That Webb, Miller and Blevins used their "political clout" to carry out their actions does not establish an official policy, but rather merely satisfies the color of law requirement of a §1983 claim.

Plaintiffs' Second Amended Complaint alleges that "Individual Defendants are liable as supervisors of the MPD officers assigned to harass, coerce and threaten the Plaintiffs as they gave direct, and knowingly illegal orders, to them with the intent of violating the Plaintiffs rights." *Id*. at ¶105. If this Court sets aside this Paragraph's formulaic recitation of the elements of a *Monell* claim, the only factual allegations plausibly relating to "supervisor liability" state that **Defendants Webb, Blevins and Howard** directed a police raid. *Id*. at ¶47 ("Defendants Sanders and Walker, at the direction of **Defendants Webb, Blevins and Howard**, began to direct members of the Markham Police Department to issue citations, without regard to their

truth or veracity, in order to deny the Plaintiffs a license renewal." A municipality can be liable for the deliberate conduct of officials whose acts can fairly be said to be those of the municipality. *Pembaur v. City of Cincinnati.*, 475 U.S. 469, 481 (1986). **But liability attaches "only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."** *Id.* With respect to ordering police officers to harass, coerce and threaten Olympian, these individual Defendants are not final policymakers through whom municipal liability can attach. Defendants Webb, Blevins and Howard serve in a legislative capacity as Mayor and Alderman in City Council, precluding them from serving in an administrative capacity to effect policy. *See* 65 ILCS 5/3.1-15-15 ("A mayor, president, alderman ... shall not hold any other office under the municipal government..."). Additionally, as alleged, Walker works under Sanders and thus, by definition, does not have final authority for policy or actions taken by the Police Department.

### Widespread Practice

As this Court has recognized, allegations that a plaintiff constituted a "class of one" are inherently inconsistent with a *Monell* claim based on a "widespread" municipal practice. *See Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007) (Kendall, J.) (Plaintiff "fails to plead the existence of a widespread practice, **nor can he in light of the fact that his Complaint appears to allege that the Village's alleged animosity was directed toward [him] alone**.") (emphasis added).

Finally, as additional and independent bases for dismissal of Count VI, Plaintiffs have not and cannot allege they suffered any constitutional deprivation (beyond the mere conclusory allegations of constitutional violations which this Court need not accept as true).

### K.    Plaintiffs' Claims Arising Before July 18, 2016 Are Time-Barred

22

A party may raise a statute of limitations defense in a motion to dismiss if the allegations in the complaint set forth everything necessary to satisfy the affirmative defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citation omitted). Plaintiffs Second Amended Complaint alleges fraudulent citations dating back to January 21, 2013. *Id.* at ¶30 ("From January 21, 2013 to December 4, 2017, Defendants issued thirty-seven (37) false and fictitious citations to Olympian"). Plaintiffs filed their initial Complaint on July 18, 2018. Therefore, claims arising on or prior to July 18, 2016 are untimely. Plaintiffs plead themselves out of Court by conceding they sat idly for five and a half years after receiving their first fraudulent ticket to seek redress. At the time they received the year 2013 tickets (and for over two years thereafter), Plaintiffs knew or should have known that any claims they may have had accrued already for purposes of the statute of limitations. Accordingly, Plaintiffs' pre-July 18, 2016 claims are time-barred by the governing statute of limitations and should be dismissed.

**L.  Plaintiffs' Claims Are Barred By The Rooker-Feldman Doctrine**

The core of Plaintiffs' entire Second Amended Complaint is that Defendants are issuing false citations with hopes to close Olympian. Plaintiffs specifically allege that Olympian "**is, and has always been, in compliance with the issued license to operate in the City of Markham**." Scnd. Amend. Compl. at ¶110. Plaintiffs think they have a 4:00 am license and ask this Court to declare "Plaintiffs' liquor license as valid." Plaintiffs' story flies in the face of the unappealed (and therefore conclusive) decision of the MLCC. *See* **Group Exhibit C** ("Encore was open and operating … while displaying a "Class A" license in the name of Olympian Group, LLC d/b/a Billboard), *id.* ("Encore continued to operate after 2:00 a.m. in violation of [Markham Ordinances]"), and *id.* ("The suspension of Encore's license shall terminate upon payment of [the] fines [and] **removal of the Class A license in the name of Olympian Group, LLC d/b/a**

*Billboard* **issued on May 2017 and posting of the Class A(2) license in the name of Olympian Group, LLC d/b/a** *Encore*")(emphasis added.) Plaintiffs neither appealed nor sought any administrative review of the MLCC decision.

Plaintiffs' claims against Defendants are likewise inextricably intertwined with the Agreed TRO dated December 22, 2017 approved and entered by Judge Gamrath. By way of example, Plaintiffs' Second Amended Complaint alleges that Defendants took certain actions in furtherance of their alleged conspiracy, including "threatening to close Olympian in violation of and absolute disregard for a court order." Scnd. Amend Compl. ¶93(a). Instead, Plaintiffs seek relief from the federal court. Federal courts are not the place for disgruntled liquor licensees to seek appellate review of unappealed local liquor license decisions. Accordingly, this Court should dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction.

## M.      INDIVIDUAL DEFENDANTS

### a)  **"Individual Capacity" Liability**

Plaintiffs seek relief against several municipal officers, including former Mayor Agpawa, former Mayor Webb, Chief Sanders, Officer Walker, and Aldermen Howard, Alderman Jones and Alderman Barron, in their individual capacities. *Id.* at p. 1. However, Plaintiffs' Second Amended Complaint fails to plead allegations that allow the Court or Defendants to draw the reasonable inference that several of the defendants (namely, Aldermen Jones and Barron) are liable on an individual basis for the constitutional misconduct alleged. Consequently, Plaintiffs' suit against Aldermen Jones and Barron in their individual capacities should be dismissed. Individuals cannot be liable under section 1983, of course, unless they have a "personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649,

657 (7th Cir. 2017). That is, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.*

Here, nothing in the Complaint establishes that Alderman Jones caused any of the alleged constitutional violations; he is barely mentioned in the Second Amended Complaint. *See e.g.* Scnd. Amend. Compl. at p. 1 (caption), at *id.* (Preamble) and at *id.*, p. ¶9 (identifying Jones's role as an Alderman). The fourth and final allegation naming Jones is a boilerplate allegation including all other individual defendants. *Id.* at ¶36 ("Defendants Webb, Miller, Blevens, Howard, Jones, Barron, Sanders and Walker embarked on a series of actions calculated and intended to deprive the Plaintiffs of their right to conduct business in an honest manner, free from the corruption of the City government and its corrupt elected officials"). Plaintiffs' vague allegations against Jones do not provide an adequate basis for individual liability under §1983.

The allegations against Alderman Barron are similarly deficient. *Id.* at p. 1 (caption), at *id.* (Preamble) and at *id.*, p. ¶9 (identifying Barron's role as an Alderman). Plaintiffs generally allege that all Defendants initiated a campaign to close Olympian. *Id.*, ¶¶38, 46. However, Plaintiffs do not identify what personal hand, if any, Alderman Barron had in depriving Plaintiffs of any alleged constitutional rights.

The allegations against Alderman Howard miss the mark, too. Plaintiffs met with Sanders and Howard in City Hall to discuss a name change for Olympian. *Id.*, ¶40. In late 2016, Plaintiffs "met with Webb and Howard" and were told Plaintiffs "would not be permitted to operate as their license provided." *Id.* at ¶43. Plaintiffs appear to be referencing the City of Markham Special City Council Meeting dated October 11, 2016 during which Bradford was told

that his business would not be "grandfathered in at the old ordinance."[19] Plaintiffs' allegations do not suggest that Howard (or Webb) personally had a hand in refusing to allow Plaintiffs to operate pursuant to their liquor license at that time, which Plaintiffs claim was a "Class A" i.e. 4 am license. Rather, the category of license which they had was eliminated pursuant to a public hearing and vote in favor of elimination of *all* "Class A" liquor licenses. The City Council's role in voting and enacting the amendment does not and cannot provide an adequate basis for individual liability under 42 U.S.C §1983. *See e.g. Dyson*, (state and local legislators are absolutely immune in any suit for damages arising under 1983 for actions that are "legitimate legislative activity … and the claim of an unworthy purpose does not destroy the privilege." (Internal citations omitted). No Defendant in this case should be individually liable.

## N.     STATE LAW CLAIMS

The Individual Defendants and the City are immune from liability from injuries caused by the enactment and enforcement of their liquor license Ordinances. Therefore, dismissal is proper on Plaintiffs' state-law claims (all of which relate to the enactment and/or enforcement of fines relating to Plaintiffs' business. Immunity (and lack of supplemental jurisdiction) aside, each of Plaintiffs' state law claim fails to state a claim upon which relief can be granted.

### a.  Conversion and Extortion

Plaintiffs claim that Defendants took wrongful assumption of control over more than $30,000.00 of Plaintiffs' money. *Id.* at ¶115. Yet, Plaintiffs concede to "tender[ing] $33,050.00 to the City of Markham on May 4, 2018." As a liquor establishment (or owners of same), Plaintiffs have expressly agreed to abide by the provisions of the Illinois Liquor Control Act. The payments on which Counts XIII and XI are based represent outstanding fines and fees owed to

---

[19] This Minutes from the Meeting are attached. This Court may take judicial notice of public records. *See e.g. Roller v. Board of Educ. of Glen Ellyn School Dist.*, 2006 WL 200886, *4 (N.D. Ill. 2006) ( judicial notice of minutes from public meeting).

the City, which Plaintiffs paid with complete knowledge and understanding that payment was a condition precedent to obtain a new liquor retail license for the period May 1, 2018 through April 30, 2019. *See* **Group Exhibit B** at Ex. G. Accordingly, Plaintiffs' conversion and extortion counts are both barred by Plaintiffs' payment of the amounts without first addressing the issues at the state or local level. Their failure to exhaust administrative remedies relative to the fines, and their subsequent payment of the amount, precludes Plaintiffs from seeking relief in this Court.

### b. Negligent Interference with a Business Relationship

Plaintiffs allege: (1) Olympian has a valid contract with the City of Markham to sell alcohol and to operate a nightclub in the City of Markham; (2) Defendants are aware of the contractual and business relationship between Olympian, the City of Markham, and Ron Finlay; (3) Olympian has lost benefits from the contract and has incurred added costs in performing the contract; (4) Defendants are negligently interfering with the contract between the City of Markham and Olympian and between Olympian and Ron Finlay by issuing false and fraudulent citations, amending the parameters and laws surrounding the liquor license when it so chooses, and by coercing the Plaintiffs to cease doing business in the City of Markham; (5) As a direct and proximate cause of the Defendants actions, the Plaintiffs suffered permanent and temporary injury; and (6) Defendants have caused Plaintiff substantial economic harm.

Defendants cannot defend themselves again this claim. Plaintiffs' claim is confusing and does not give notice to Defendants regarding who Plaintiffs are alleging contracted with who, when and for what. Additionally, City cannot interfere with a contract to which it is a party, and this claim is barred by Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-109, 2-201, 2-210 (West 2012). The Act protects local public entities and public

employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2012). Regardless, this Court should dismiss the negligent interference count for want of subject matter jurisdiction.

## O.    Punitive Damages

Plaintiffs pray for punitive damages in every Count of their Complaint. **Punitive damages are not recoverable against City of Markham or Mayor Blevins, Chief Sanders or D.C. Walker sued in their official capacity**. Thus, all claims for punitive damages against these Defendants should be stricken.

## P.    Immunities

### a)   Absolute Legislative Immunity

The Liquor Act vests the mayor with the authority to issue fines, suspend licenses, and summarily close licensees' businesses for short periods. The Mayors did not act in the clear absence of all jurisdiction by exercising this authority, even if he failed to comply with the procedures mandated by the Act. Because Mayor Blevins and Webb both enjoy absolute immunity from liability arising out of these actions, we need not reach the merits of plaintiff's claim against the mayor in his individual capacity. See *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004). Under Illinois law, a local liquor commissioner acts in his judicial capacity when renewing, revoking or suspending liquor licenses, and therefore benefits from absolute immunity. *Killinger v. Johnson,* 389 F.3d 765 (7th Cir. 2004); *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir. 1983). Therefore, as a member of the Local Liquor Commission, Blevins is entitled to absolute immunity. "It is precisely because disgruntled litigants ... may so easily allege bias, prejudice, or improper motive in a collateral attack against an unfavorable ruling that the doctrine of absolute immunity works to insulate

28

those protected against §1983 liability ....” *Gianessi v. City of Pekin,* No. 01-4353, 2002 WL 31641568 (7th Cir. 2002). Moreover, the City Council and Alderman are entitled to absolute immunity.

Likewise, Attorney Miller is absolutely immune for his actions as the attorney for the City and legal advisor to the Local Liquor Commission. Because Miller acted purely in his capacity as legal counsel for the Liquor Commission, he enjoys the immunity enjoyed by member of the Local Liquor Commission. Furthermore, Miller acted in the performance of his official duties when prosecuting the complaints brought by the Local Liquor Commission. Consequently, all claims against Miller should be dismissed as he owed not duties to any Plaintiff and no privity exists between Miller and any Plaintiff. An attorney cannot be liable to a non-client, in general, due to a lack of privity between the parties. *York v. Stiefel*, 99 Ill 312 (1983); *Bloomer Amusement Co. v. Eskenazi*, 75 Ill App 3d 117 (5th Dist. 1979).

### b) Qualified Immunity

The individual Defendants are shielded by qualified immunity and should be dismissed from this suit. The qualified immunity doctrine enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), was formulated precisely to allow government officials, the necessary latitude to vigorously exercise their authority without the chill and distraction of damages suits by ensuring that only conduct that unquestionably violates the Constitution will subject an official to personal liability. Qualified immunity shields government officials sued in their individual capacities from civil liability where “their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known.” *Id*. at 818.

The Supreme Court has “repeatedly stressed” that courts should apply qualified immunity “at the earliest possible stage in litigation.” *Saucier*, 533 U.S. at 201, quoting *Hunter v. Bryant*,

29

502 U.S. at 227. Qualified immunity is more than immunity from liability; it is intended to protect against the entirety of the litigation process. *See Harlow*, 457 U.S. at 818 (stating that discovery should not be allowed in cases where a defense of qualified immunity is raised "until the threshold immunity question is resolved"); see also *Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 674 (7th Cir. 1990) (acknowledging that a stay of discovery is appropriate where defendant filed motion to dismiss based on qualified immunity).

Here Plaintiffs fail to allege that the individual defendants engaged in conduct that violated a constitutional right. Plaintiffs also fail to allege the individual Defendants violated a clearly established constitutional right. As addressed in the preceding paragraphs the individual Plaintiffs claims are confusing, vague, and not specific in enunciating what constitutional rights the individual defendants violated.

### c) City, Chief Sanders and D.C. Walker

Plaintiffs' claims against the City, Sanders and Walker are barred by Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-109, 2-201, 2-210 (West 2012). The Act protects local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2012). It provides, in relevant part, that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2012). "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2012). See *Lorenc v. Forest Pres. Dist. of Will Cnty.,* 2016 IL App (3d) 150424-U (Ill. App., 2016). Here, even if Plaintiffs' allegations are true concerning the Markham Police force's searching of

Olympian's property or "pattern of harassment by citation and police presence" (see Dkt. 1, ¶¶ 28, 32), Sanders and Walker are immune from liability for the proper exercise of their police duties in the enforcement of the City of Markham liquor license ordinances. Likewise, the City of Markham is also immune from the enforcement of its ordinances by the Markham Police Department.

Alternatively, Sanders and Walker are entitled to qualified immunity. Indeed, the obvious ambiguities here cry for the application of qualified immunity, which "protects police officers who reasonably interpret an unclear statute." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) (internal quotation omitted); *see also Neita v. City of Chicago*, 830 F.3d 494, 499 (7th Cir. 2016) ("An official who reasonably relies on a facially valid state law may be entitled to qualified immunity if his conduct is later challenged."). The Court's "inquiry is aimed at determining whether a reasonable person in the officer's position would have understood his actions to be against the law at the time he acted," *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017), and a reasonable officer in Walker's position could have easily concluded, given the obvious threats to City's welfare posed by Encore's violations, that they were empowered to enforce the ordinance. It is Plaintiffs' obligation to establish that "the proffered right was clearly established at the time the challenged conduct occurred." *Lilah's, Inc. v. Lacey,* No. 15 CV 5017, 2017 WL 1197102, at *6 (N.D. Ill. Mar. 31, 2017).

The Tort Immunity Act provides an absolute immunity for all of the allegations that are inextricably intertwined with the alleged license and citations placed in issue by way of Plaintiffs' Second Amended Complaint at Law. 745 ILCS 10/2-104 provides an immunity to all of the named Defendants because, pursuant to Section 2-104 of the Tort Immunity Act. By way

of this statute, there is no federal subject matter jurisdiction for any of Plaintiffs' claims and each

Defendant must be dismissed, with prejudice, from these proceedings.

    **d) The Extortion, Conversion, Negligent Interference with Business Relations and Trespass to Land Claims should be dismissed.**

    Due to the lack of federal subject matter jurisdiction, this Court should decline to exercise

its supplemental jurisdiction over these claims.  Paying fines enforced by local ordinance is not

extortion.  Accepting fines levied pursuant to local ordinance is not conversion. Regulating

licenses for business within its city limits does not rise to the level of Markham negligently

interfering with Plaintiffs or trespassing upon Plaintiffs land. All of these state claims must be

dismissed because the City and its officials have a statutory right to regulate liquor and business

licenses with the City of Markham.  By operation of law, Defendants have a statutory right to

enter onto Plaintiffs' premises for purposes of inspection, and Plaintiffs' do not enjoy immunities

from the City's right to enforce local ordinances.

**<ins>CONCLUSION</ins>**

    WHEREFORE, for the foregoing reasons, Defendants, CITY OF MARKHAM, DAVID

WEBB, STEVE R. MILLER, CLIFTON HOWARD, RONDAL JONES, WILLIAM BARRON,

MACK SANDERS, and DEPUTY CHIEF JAMES WALKER, request that this Motion be

granted and that Court dismiss the Second Amended Complaint with prejudice.

                                       Respectfully submitted,

                                       /s/Stephen A. Berrios           
                                       Attorneys for Defendants

Stepfon R. Smith-6282135
Stephen A. Berrios-6305475
SMITHAMUNDSEN LLC
150 North Michigan Avenue
Suite 3300
Chicago, Illinois 60601
(312) 455-3008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished per the CM/ECF system.

/s/ Stephen A. Berrios_____