**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OLYMPIAN GROUP LLC | ) | |
| d/b/a/ ENCORE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 18-cv-04919 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF MARKHAM, an Illinois | ) | |
| municipal corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Olympian Group LLC ("Olympian"), doing business as "Encore," operates a nightclub in Markham, Illinois. Olympian and two of its members, Plaintiffs Corey Bradford and Michael Irvin, have sued the City of Markham ("Markham"), the Markham Liquor Control Commission ("MLCC"), and eight individuals who have served as local officials or police officers for Markham. The suit arises out of actions that Markham and some of its officials and police officers allegedly took to harass Olympian, issue it citations in bad faith, and shut down its nightclub. Plaintiffs' Second Amended Complaint ("SAC") contains eight claims arising under federal law and four state-law tort claims. (Dkt. No. 46.) Defendant Roger Agpawa, individually and in his capacity as Mayor and Local Liquor Control Commissioner ("LLCC") of Markham, has moved to dismiss all claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 57.) The rest of the Defendants together have filed their own motion under Rules 12(b)(1) and 12(b)(6) to dismiss the claims against them. (Dkt. No. 63.) For the reasons that follow, both motions to dismiss are granted in part and denied in part.

## BACKGROUND

For the purposes of Defendants' motions to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to Plaintiffs. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

As alleged, Olympian is an Illinois limited liability company ("LLC") based in Markham, Illinois. (SAC ¶ 1, Dkt. No. 46.) Bradford and Irvin are both members of the LLC, and Bradford also serves as a manager of the LLC. (*Id.* ¶¶ 2, 3.) Olympian's business consists of running a nightclub in Markham. (*Id.* ¶ 15.) Plaintiffs' claims in this case concern actions that local officials and police allegedly took to shut down that nightclub.

Plaintiffs name nine Defendants in their SAC. First among them is Markham. (*Id.* ¶ 4.) In addition to Markham, Plaintiffs have sued eight people who have held positions in Markham's government or police department: Agpawa, who currently serves as Mayor and LLCC; David Webb, Jr., the former Mayor and LLCC; Steve Miller, the Markham City Attorney; Clifton Howard, Rondal Jones, and William Barron, all Markham aldermen; Mack Sanders, Markham's Chief of Police; and James Walker, a Markham police officer. (*Id.* ¶¶ 5–12.)

When Olympian opened in 2012, Markham issued it a liquor license that allowed it to serve alcohol until 5:00 a.m. on Friday and Saturday nights and 4:00 a.m. all other nights. (*Id.* ¶¶ 16–17.) Olympian refers to this license as a "4am license." (*Id.* ¶ 17.) At that time, Markham ordinances required liquor licenses for establishments with a capacity of 200 persons or less to be 4:00 a.m. licenses. (*Id.* ¶ 18.) Markham issued Olympian a new 4:00 a.m. license every year from 2013 to 2016. (*Id.* ¶ 20.) Olympian received a 4:00 a.m. license again in 2017, despite some changes to Markham's liquor licensing laws. (*Id.* ¶¶ 21–22.)

Olympian alleges that Defendants "began their crusade to run Plaintiff out of business" after Olympian renewed its liquor license in 2017. (*Id.* ¶ 23.) According to Plaintiffs, Defendants were motivated to close down Olympian because it was competing with a nightclub and a strip club owned by a local businessman who exercised influence in local politics. (*Id.* ¶¶ 24–28.) Between January 21, 2013 and December 4, 2017, Markham police issued 37 citations to Olympian for alleged violations of its licenses and local ordinances. (*Id.* ¶ 30.) Twenty-eight of those citations were for selling liquor after hours. (*Id.* ¶ 31.) Yet Olympian alleges that it always has complied with the terms of its liquor license. (*Id.*)

When Olympian attempted to review its business license that was set to expire on May 1, 2018, Markham and some combination of individual Defendants denied Olympian's renewal applications six times between April 12, 2018 and May 1, 2018. (*Id.* ¶ 33.) During that time, Webb, Miller, Howard, Jones, Barron, Sanders, Walker, and Ernest Blevins (a former mayor of Markham) "embarked on a series of actions calculated and intended to deprive the Plaintiffs of their right to conduct business in an honest manner." (*Id.* ¶ 38.)

It appears that this campaign in 2018 was allegedly connected to previous problems Plaintiffs had with Markham. For example, Markham and some combination of individual Defendants denied Olympian's application to change the operating name of its club in 2016. (*Id.* ¶ 39.) Plaintiffs met with Sanders and Howard about it and, after the meeting, the rival businessman mentioned above called Plaintiffs to tell them that Markham was not going to let Olympian's nightclub operate. (*Id.* ¶¶ 40–41.) Someone gave Plaintiffs an additional list of requirements for opening their business. (*Id.* ¶ 42.) Plaintiffs say that they protested to the Markham building commissioner, who told them that he had been instructed never to let Olympian's club open. (*Id.*) Subsequently, in 2017, Plaintiffs met with Webb and Howard, who

told them that Olympian was a "casualt[y] of war" and would not be permitted to operate, despite its licenses. (*Id.* ¶ 43.) According to Plaintiffs, Miller controlled the issuance of business and liquor licenses at that time. (*Id.* ¶ 44.)

Miller, Blevins, Howard, Jones, Barron, Sanders, and Walker allegedly started a new campaign to drive Plaintiffs out of business in December 2017. (*Id.* ¶ 46.) Webb, Blevins, and Howard directed Sanders and Walker to order Markham police to issue citations to Olympian even if citations were not justified. (*Id.* ¶ 47.) The purpose of those citations was to give Markham reason not to renew Olympian's licenses. (*Id.*) On the afternoon of April 30, 2018, someone with authority told Bradford that if Olympian did not pay $33,050 in certified funds by the close of business to cover existing citations, Markham would close the nightclub. (*Id.* ¶ 48.) Plaintiffs paid $33,050 to Markham on May 4, 2018. (*Id.* ¶ 50.) A few days later, Olympian applied for and paid the fee for a 4:00 a.m. liquor license. (*Id.* ¶ 51.) Markham, however, granted Olympian a ***2:00 a.m.*** liquor license, which Plaintiffs describe as "fraudulent." (*Id.* ¶ 52.) Plaintiffs claim that a local ordinance required Markham to issue Olympian a 4:00 a.m. license. (*Id.* ¶¶ 55–56.) Plaintiffs claim that they have complied with the 2:00 a.m. license but Markham police have still continued to issue "false and fraudulent" citations for selling liquor after hours and exceeding the nightclub's capacity. (*Id.* ¶ 57.) Ten of those after-hours citations were issued during hours in which Olympian was licensed to sell alcohol. (*Id.* ¶ 59.)

Olympian requested but did not receive an opportunity to be heard on the status of its license. (*Id.* ¶ 62.) Moreover, Walker and Sanders's campaign against Olympian continued to intensify from May 2018 forward. (*Id.* ¶ 63.) In June and July 2018, Walker and Sanders ordered Markham police to enter the nightclub and prevent patrons from entering. (*Id.* ¶ 64.) One night, Walker went to the nightclub at 10:30 p.m. and informed the manager that the business could not

4

open that night and that Irvin had to be present for it to open. (*Id.* ¶ 65.) Markham police officers told Plaintiffs that unspecified "bosses" had ordered them to shut down Olympian. (*Id.* ¶ 66.) The officers also told Plaintiffs that they knew their activities were simply harassment. (*Id.* ¶¶ 66, 104) Plaintiffs never had a meaningful opportunity for review of Defendants' conduct. (*Id.* ¶¶ 67–68.)[1]

Plaintiffs filed their original complaint in this case in July 2018. (Dkt. No. 1.) That was followed by a First Amended Complaint ("FAC") in September 2018. (Dkt. No. 19.) Defendants moved to dismiss the FAC in November 2018. (Dkt. No. 24.) But events on the ground continued to unfold even as the case proceeded in this Court.

On December 31, 2018, Olympian opened its club for business in compliance with its licenses. (SAC ¶ 138.) Shortly before 2:00 a.m., a Markham police officer entered the club and told Irvin to turn on the lights, get the customers to leave, and close the club. (*Id.* ¶ 139.) Irvin complied. (*Id.*) Walker then entered the club and demanded that Irvin turn over the club's business license. (*Id.* ¶ 140.) Irvin did so, and the club shut down for business. (*Id.* ¶ 141.) No Defendant provided any basis for revoking the business license. (*Id.* ¶ 142.) And there was no citation or hearing date in relation to the revocation of Olympian's business license. (*Id.* ¶¶ 144–45.)

Plaintiffs petitioned this Court for a temporary restraining order ("TRO"). (*Id.* ¶ 146; Dkt. No. 36.) At the hearing, the City admitted that it did not want a "strip club" like Olympian's club in town. (SAC ¶¶ 149–50.) The Court concluded that a hearing on the TRO would be premature because of a hearing already scheduled before the Mayor of Markham on January 8, 2019. (*Id.* ¶ 152; Dkt. No. 40.) On February 18, 2019, Agpawa fined Plaintiffs $500 and "permanently restricted" their business license "without prejudice." (*Id.*) Plaintiffs believe that this action was based on the content of the entertainment at the club or the viewpoint of Olympian and its owners.

---

[1] Plaintiffs number both the last two paragraphs of the facts and the first two paragraphs of Count I as paragraphs 67 and 68. Here, the Court refers to the last two paragraphs of the facts section.

(*Id.* ¶ 158.) The restrictions on Olympian's business license have caused Olympian to lose substantial revenue. (*Id.* ¶ 159.)

After Markham placed restrictions on Olympian's business license, Plaintiffs filed their SAC in March 2019. (Dkt. No. 46.) Defendants filed their motions to dismiss in July 2019, which asked the Court to dismiss the SAC in its entirety. (Dkt. Nos. 57, 63.) Plaintiffs' SAC contains twelve claims against the nine Defendants. There are eight federal-law claims and four state-law claims. Counts I through IV assert claims under 42 U.S.C. § 1983 against all individual Defendants. Those counts respectively concern procedural due process, equal protection, free speech, and unreasonable searches and seizures. Count V asserts a claim against all individual Defendants pursuant to 42 U.S.C. § 1985(3) for conspiracy to violate Plaintiffs' right to equal protection of the law. Counts VI through VII contain a *Monell* claim against Markham and a request for declaratory and injunctive relief.[2] Count VIII is a state-law conversion claim against Markham and Webb. Count X (the SAC does not include a cause of action labeled as Count IX) is a state-law claim for negligent interference with a business relationship against all individual Defendants. Count XI consists of a state-law extortion claim against all individual Defendants. Count XII asserts a state-law trespass to land claim against all individual Defendants. And Count XIII is a § 1983 claim concerning free speech against Markham, Agpawa, and the MLCC (which has not been served). Plaintiffs have clarified in their briefs that Count XIII asserts a claim against Agpawa only in his official capacity. (Resp. in Opp'n to Mots. to Dismiss at 15 n.4 ("Opp'n"), Dkt. No. 68.) For all claims, Plaintiffs seek damages, punitive damages, equitable relief, and pre- and post-judgment interest. (SAC ¶¶ 67–160.)

---

[2] A plaintiff cannot sue a municipality under § 1983 based on a theory of *respondeat superior. See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Instead, a plaintiff may only maintain a § 1983 suit against a municipality if the municipality maintained a policy, practice, or custom that caused the violation of rights guaranteed by the Constitution or laws of the United States. *See id.*

In December 2019, after the motions to dismiss the SAC were fully briefed, Plaintiffs again petitioned the Court for a TRO. (Dkt. No. 82.) They claimed that Markham had revoked both Olympian's liquor license and its business license without providing an opportunity to be heard. The Court held a contested hearing on the issue but ultimately declined to issue a TRO. (Dkt. No. 85.) The Court abstained from ruling on the merits of Plaintiffs' petition because there were ongoing administrative proceedings before the City of Markham that could be reviewed in Illinois state court. *See Younger v. Harris*, 401 U.S. 37, 44–46 (1971) (holding that, in most circumstances, district courts should abstain from interfering with ongoing state criminal, civil enforcement, or administrative proceedings). The Court has not held further hearings or received further filings that clarify the status of Olympian's business license and liquor license.

## DISCUSSION

Defendants have moved to dismiss all Plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] Both motions to dismiss ask the Court to take judicial notice of a raft of documents. (*See* Dkt. Nos. 58-1–58-12, 64-1–64-5.) The Court declines to take judicial notice of those documents. The Court can resolve the issues raised by the motion to dismiss without them, and it would be more appropriate to consider the documents on a motion for summary judgment or at trial.

In addition to the basic notice pleading requirement embodied in Federal Rule of Civil Procedure 8, Agpawa contends that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiffs' claims because they involve a fraudulent course of conduct. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That heightened pleading standard applies when a claim is based on a fraud, even if the cause of action is not for fraud. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In the SAC, there are scattershot descriptions of Olympian's citations as false or fraudulent. But despite the allegations of false statements, Plaintiffs' claims are not based on fraud. *See Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000) (giving the elements of common-law fraud). Plaintiffs have alleged that they knew that all the false statements by Defendants were false, so they were not deceived or defrauded by those statements. In addition, Plaintiffs have not alleged any form of reliance on Defendants' false statements. Therefore, even though false statements form an important part of Plaintiffs' allegations, Plaintiffs' claims are not "premised upon a course of fraudulent conduct" and the heightened pleading standard in Rule 9(b) does not apply. *Borsellino*, 477 F.3d at 507.

Defendants have also moved to dismiss some claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). To test the jurisdictional sufficiency of Plaintiffs' SAC, the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). The Court may, however, look at evidence the parties have submitted beyond the pleadings to determine if it has subject-matter jurisdiction. *See Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

## I.     Standing and Proper Parties

Before addressing whether the SAC adequately states a claim, the Court first addresses whether all Plaintiffs belong in this lawsuit. There is no dispute that Olympian both has standing to pursue the claims raised in the SAC and is the proper party to raise them under Federal Rule of Civil Procedure 17(a). But for Bradford and Irvin, it is not clear that they have standing or that they are real parties in interest as necessary to assert the clams here.

The standing requirement is grounded in the Constitution's restriction of federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Bradford and Irvin have suffered no injury from the conduct alleged in the SAC. Instead, all the harm from the torts and constitutional violations alleged in the SAC was directed to Olympian, which is an LLC. While Bradford and Irvin are members of that LLC, they have not alleged that they were harmed as individuals. The only individual harm to Bradford and Irvin that Plaintiffs identify in their briefs is the possibility that Bradford and Irvin were seized during one or more visits by Markham police to the nightclub. (*See* Opp'n at 7–8.) But the SAC contains no allegations that Bradford or Irvin were ever seized by police or suffered any other injury personal to them. Bradford and Irvin thus lack standing to pursue any of the claims asserted in the SAC.

Bradford and Irvin also fail to meet the requirements to bring suit in Rule 17(a) because they only assert injuries to the LLC. Fed. R. Civ. P. 17(a) (requiring all suits to be brought by the real party in interest); *see Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996)

(holding that even in a closely held corporation, "Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name."). A member of an Illinois LLC may file a derivative action to enforce a right that the LLC itself refuses to enforce. *See* Fed. R. Civ. P. 23.1(a); 805 ILCS 180/40-10. But Bradford and Irvin may not maintain a derivative action in this case because the LLC itself is a Plaintiff. Therefore, the individual Defendants are not enforcing any right that the LLC refuses to enforce.

In his motion to dismiss, Agpawa also contends that Olympian has failed to allege that it is a proper party in this suit. Agpawa contends that Olympian has failed to plead that a majority of its members consented to the suit. Of course, a party need not plead its "capacity to sue or be sued," unless it is necessary to establish the Court's jurisdiction. Fed. R. Civ. P. 9(a)(1)(A). Nonetheless, even if Olympian were required to plead that it has the capacity to sue, it has done so. Under Illinois law, an LLC may be managed by its members or by an appointed manager or managers. 805 ILCS 180/15-1(a)–(b). A member-managed LLC must have the consent of a majority of its members to sue, while a manager-managed LLC must have the consent of a majority of its managers. 805 ILCS 180/15-1(b)–(c). The SAC suggests (even if it does not explicitly state) that Olympian is a manager-managed LLC. (*See* SAC ¶ 2.) Bradford and Irvin are the only members mentioned in the SAC, and Bradford is the only manager named. (*Id.* ¶¶ 2–3.) Based on Bradford and Irvin's status as individual Plaintiffs, it is reasonable to infer that both consented to the LLC bringing suit. The consent of the only alleged manager and the only two alleged members suffices to establish Olympian's right to sue.[4]

---

[4] The only case Agpawa cites in support of his position is inapposite. *See Freed v. JPMorgan Chase Bank, N.A.*, No. 12 C 1477, 2012 WL 3307091, at *5–6 (N.D. Ill. Aug. 13, 2012). In that case, the complaint alleged that one of the LLC's two members was the defendant in the suit and, presumably, did not consent to the suit. *Id.* But drawing all reasonable inferences in favor of Plaintiffs in this case, Olympian received appropriate authorization from its members or managers to initiate this lawsuit.

## II.     Claims Plaintiffs Agree to Dismiss and Miscellaneous Parties

Before reaching the bulk of Plaintiffs' claims, the Court must dismiss certain claims and parties from the SAC. Plaintiffs have agreed to the dismissal of Count X, which is a claim for negligent interference with a business relationship against all individual Defendants. (Opp'n at 2.) The Court therefore dismisses Count X. Plaintiffs have also agreed to the dismissal of Count V, which asserts a claim that all individual Defendants engaged in a conspiracy to deprive Plaintiffs of equal protection of the laws in violation of 42 U.S.C. § 1985(3). (*Id.*) The Court dismisses that claim with prejudice because Plaintiffs have admitted that a class-of-one equal protection claim cannot form the basis for a § 1985(3) conspiracy. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).

In addition, the SAC appears to assert claims against certain persons who are not named as Defendants and have not been served. Count XIII states that it is a § 1983 claim against, among others, the MLCC. Plaintiffs have agreed to dismiss any claims against the MLCC with prejudice (Opp'n at 2), so the Court dismisses all such claims with prejudice. Count VIII asserts a conversion claim against, among others, Blevins. Blevins was named as a Defendant in previous iterations of the complaint. But he was not named as a Defendant in the caption to the SAC, as required by Federal Rule of Civil Procedure 10(a). Plaintiffs do not comment on the propriety of dismissing claims against Blevins. But the Court concludes that it is appropriate to dismiss all claims against Blevins because he was not named in the SAC, he has not been served since Plaintiffs filed the SAC on March 22, 2019, and the SAC notes that he is deceased. (SAC ¶ 5.)

## III.     Procedural Due Process Claim (Count I)

The Court now turns to the merits of Plaintiffs' claims. Count I asserts a § 1983 claim alleging that all individual Defendants deprived Plaintiffs of their rights under the Due Process

11

Clause of the Fourteenth Amendment. Plaintiffs characterize the claim as falling under the procedural due process component of the Due Process Clause. To state a claim for the deprivation of procedural due process rights, Plaintiffs must allege that (1) they had a constitutionally protected liberty or property interest, (2) a state actor deprived them of that interest, and (3) the deprivation occurred without due process of law. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010). Further, as state law remedies exist here, Plaintiffs must "either avail [themselves] of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996).

Plaintiffs characterize the interest at stake as a "liberty interest[] in conducting and running a lawful business." (SAC ¶ 69; Opp'n at 10.) The Due Process Clause does protect occupational liberty, which is the right to follow a particular trade, profession, or calling. *See Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992). But occupational liberty does not provide a right to hold any particular job or work in any particular business. *Id.* Plaintiffs have not alleged that Defendants have prevented them from following a certain trade or profession, even if they did interfere with a particular business's operations. Moreover, because Bradford and Irvin lack standing and are not proper Defendants, Olympian is the only Plaintiff left in this case. Plaintiffs have provided no authority for the proposition that a corporate entity possesses occupational liberty rights under the Due Process Clause and the Court has found none.

Nonetheless, the Court concludes that Olympian has adequately pleaded that it had a protected property interest in its liquor license. The Seventh Circuit has held in several cases that Illinois liquor licenses create property interests for purposes of the Due Process Clause. *See LaBella Winnetka*, 628 F.3d at 943–44; *Reed v. Village of Shorewood*, 704 F.2d 943, 949–50 (7th Cir. 1983), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698, 713 (7th Cir. 2016).

Plaintiffs have pleaded that Olympian held a liquor license granted by Markham. That suffices to establish that they had a protected property interest.

Having pleaded a property interest, the Plaintiffs must plead that a state actor deprived them of that interest. Plaintiffs' procedural due process claim appears to revolve around an alleged campaign by Markham police to issue citations under false pretenses, scare away Olympian's customers, and force Olympian to shut down as a business. (*See* Opp'n at 11.) Here, the alleged state action deprived Plaintiffs of the value of their liquor license. The state does not need to revoke a person's license to deprive them of a property right. *See Reed*, 704 F.2d at 949. State action that substantially impedes a person's rights under a license can suffice to state a claim for a due process violation. *See id.* In this case, Plaintiffs have pleaded that police action repeatedly interrupted their business, forced customers to leave, and forced the nightclub to close early or stop serving liquor early. That suffices to plead a deprivation of protected property rights.

Plaintiffs must also plead that their rights were deprived without due process of law. The three factors the Court considers when weighing whether the government deprived a person of their rights without due process of law are "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). In most cases, a person must receive due process before they are deprived of a liberty or property right. *Id.* But in this case, Plaintiffs appear to seek only post-deprivation process—specifically, a meaningful opportunity to be heard about citations Olympian has received and the conduct of police officers. Plaintiffs allege that the hearings they have received thus far have been shams and that any complaints they filed

13

against police officers would be fruitless because their superiors have conspired against Olympian.

Due process requires a real hearing, not a sham or a pretense. *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982). Plaintiffs have pleaded that any hearing they have received or could receive would be a sham. The *Mathews* factors thus weigh strongly in Plaintiffs' favor. Their private interest in the full use of their liquor license is strong, holding a real hearing would reduce the risk of an erroneous deprivation of their license, and Markham has no countervailing interest against holding a real hearing. Therefore, Plaintiffs have stated a § 1983 claim for the violation of their Due Process rights.

Finally, Plaintiffs must demonstrate that they have availed themselves of state law remedies or that those remedies are inadequate. As Plaintiffs have adequately pleaded that the hearings they have received or would receive are inadequate, they have also met this pleading requirement. The parties have not briefed the issue of *Younger* abstention, and the Court is not convinced that such abstention would be appropriate based on the facts before it. Where ongoing state proceedings allow "an opportunity to fairly pursue [a plaintiff's] constitutional claims," the federal courts should abstain. *Juidice v. Vail*, 430 U.S. 327, 337 (1977). But here, Plaintiffs have pleaded the necessary facts to show that the state proceedings do not provide an adequate opportunity to pursue their claims, making *Younger* abstention inappropriate at this time.

In addition to arguing that Plaintiffs failed to state a claim on Count I, Defendants also contend that Plaintiffs waived any due process arguments by paying about $33,000 in fines due to Markham. To support that argument, Defendants cite only *Sapir v. City of Chicago*, in which a district court held that a plaintiff waived a due process claim by paying fines he owed to the City of Chicago. 749 F. Supp. 187, 191 (N.D. Ill. 1990) ("By paying his ticket, fines and penalties,

Hendricks deprived the City of the opportunity to provide him with due process, and he thereby waived his right to test the constitutionality of the City's enforcement procedures."). But that case is inapposite because, in this case, Plaintiffs' due process claim revolves around procedures that were available to Plaintiffs but were, in effect, a sham or a pretense. The fact that Plaintiffs paid the fines to keep their licenses does not vitiate their claims that Markham had provided sham process up to that point. Construing the allegations in the SAC in Plaintiffs' favor, the Court concludes that Plaintiffs did not waive their procedural due process claim by paying fines to Markham.

The Court must also consider whether Plaintiffs have adequately pleaded the personal involvement of all Defendants. Plaintiffs have brought Count I against all eight individual Defendants.[5] But Plaintiffs' allegations suffice as to only four individual Defendants.

To prevail on a § 1983 claim against an individual defendant, a plaintiff must show that the defendant was "personally responsible for a deprivation of a constitutional right." *Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) (internal quotation marks omitted). Plaintiffs' allegations plausibly suggest personal involvement in the denial of their due process rights only by Defendants Webb, Howard, Sanders, and Walker. Specifically, Plaintiffs allege that Webb and Howard both interfered with Olympian's permits and ability to operate and directed Markham police to issue citations that lacked a basis in fact. (SAC ¶¶ 43, 47.) Plaintiffs also allege that Sanders and Walker both directed and participated in police efforts to issue citations under false

---

[5] The Court interprets this claim to be against those Defendants in their individual capacities, as any official-capacity claims would functionally be claims against Markham and thus fall under Plaintiffs' *Monell* claims. *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).

pretenses and to interfere with the operation of the nightclub. (*Id.* ¶¶ 47, 63–64.) Those allegations suffice to plead the personal involvement of those four Defendants.[6]

But there are no allegations tying Agpawa to the alleged due process violation.[7] And the only allegations that connect Miller, Jones, and Barron to that claim consist of conclusory allegations that those Defendants "embarked on a series of actions" meant to deprive Plaintiffs of their business and "initiated a new campaign to drive the Plaintiffs out of business." (*Id.* ¶¶ 38, 46.) The SAC does not, however, indicate what the "series of actions" or "campaign to drive Plaintiffs out of business" involved. Such vague and conclusory allegations are insufficient to establish personal involvement. For that reason, the Court dismisses Count I as asserted against Agpawa, Miller, Jones, and Barron.[8]

---

[6] Defendants contend that Howard, Jones, Barron, and Webb cannot be held liable under § 1983 because they have absolute legislative immunity for actions they took in a legislative capacity. *See Bogan v. Scott-Harris*, 523 U.S. 44, 53–54 (1998) (establishing absolute legislative immunity for local legislators). The Court need not consider claims of legislative immunity for any claims that did not survive Defendants' motions to dismiss, so it will not consider legislative immunity for Jones and Barron on Count I. But Plaintiffs have stated a claim against Howard and Webb on Count I. Legislative immunity protects acts that Defendants took pursuant to statutory or constitutional processes, that are integral steps in a legislative process, and that bear the hallmarks of traditional legislation. *See Bagley v. Blagojevich*, 646 F.3d 378, 392–93 (7th Cir. 2011). But the actions Webb and Howard allegedly took—interfering with duly issued permits and directing police to issue citations under false pretenses—are not part of a legislative process and do not bear the hallmarks of legislation. Therefore, legislative immunity does not protect Webb and Howard against liability under Count I.

[7] For all counts in which he is named as a Defendant, the Defendants contend that Agpawa is entitled to quasi-judicial immunity for actions he took as Markham's LLCC. *See Killinger v. Johnson*, 389 F.3d 765, 771-72 (7th Cir. 2004) (describing quasi-judicial immunity for liquor commissioners who issue fines, suspend licenses, and summarily close businesses). But the Court will not address this argument because, as described below, no claims against Agpawa in the SAC have survived Defendants' motions to dismiss.

[8] For all the § 1983 claims pleaded against individual Defendants, they claim that qualified immunity shields them from all liability. *See, e.g.*, *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017) (describing the doctrine of qualified immunity). While the Court is cognizant of its duty to address claims of qualified immunity as early as possible in litigation, the Court declines to address qualified immunity for any claim at this time because Defendants' arguments about it are conclusory and undeveloped. Defendants may renew their arguments based on qualified immunity at another appropriate time.

IV.     **Equal Protection Claim (Count II)**

Count II of the SAC alleges that all individual Defendants violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs have made clear in their SAC and their response in opposition to the motions to dismiss that they do not seek to assert that Defendants discriminated against them based on race or another protected status. (*See* SAC ¶ 74; Opp'n at 12–13.) Instead, they assert a so-called class-of-one claim. *See LaBella Winnetka*, 628 F.3d at 941. To state a class-of-one equal protection claim, Plaintiffs must allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). A plaintiff may bring a class-of-one claim based on the "irrational or malicious application" of power by law enforcement. *Id.*

The Court concludes that Plaintiffs have stated a claim in Count II. Specifically, Plaintiffs have alleged that they were treated differently than similarly-situated businesses when they were repeatedly cited by the police without cause, when police or officials interfered in the operations of the club, and when their business license was suspended. Plaintiffs do not need to identify a comparator at the pleading stage*, see id.* at 748 n.3; nonetheless, they have named another nightclub in Markham (*see* SAC ¶¶ 25–26). Furthermore, Plaintiffs have plausibly alleged that the police and municipal interference in their business was irrational and that Olympian's nightclub was treated differently than other nightclubs in Markham. At a later stage in the case, Defendants will have an opportunity to argue that their treatment of the nightclub was rational or that it was the same as their treatment of similarly-situated businesses. But for purposes of a motion to dismiss, Plaintiffs have sufficiently pleaded a class-of-one equal protection claim.

The Court must, therefore, consider whether Plaintiffs have adequately pleaded the personal involvement of all Defendants. *See Zentmyer*, 220 F.3d at 811. As with Count I, it appears that Plaintiffs have brought Count II against all individual Defendants in their personal capacities. But the Court concludes that Plaintiffs have only pleaded the personal involvement of four of the Defendants. The underlying conduct for Counts I and II is essentially the same, and so is the analysis of personal involvement. Plaintiffs allege that Howard and Walker interfered with Olympian's permits and ability to operate and that Walker and Sanders participated in and directed police efforts to issue citations under false pretenses.[9] But there are no allegations tying Agpawa to the alleged equal protection violation. And the only allegations connecting Miller, Jones, and Barron are vague conclusory allegations devoid of well-pleaded facts. Therefore, the Court dismisses Count II as asserted against Agpawa, Miller, Jones, and Barron.

## V. Free Speech Claims (Counts III and XIII)

Count III of the SAC sets out a § 1983 claim against all individual Defendants for violating Plaintiffs' free speech rights under the First Amendment. Count XIII also sets out a § 1983 free speech claim, this one against Markham and Agpawa.[10]

In Count III, Plaintiffs claim that Defendants deprived them of their "constitutional rights to run a lawful business" by issuing "fraudulent and arbitrary citations." (SAC ¶ 81.) They note the costs that Plaintiffs incurred in reliance on receiving what they believed to be a 4:00 a.m.

---

[9] Defendants raise the same legislative immunity arguments for Count II as they did for Count I. *See Bogan*, 523 U.S. at 53–54; *Bagley*, 646 F.3d at 392–93. The Court need not consider such arguments for Jones and Barron. But as for Howard and Webb, against whom Count II survives, the Court concludes that legislative immunity does not apply for Count II for the same reasons that it did not apply for Count I.

[10] Plaintiffs have clarified that Count XIII only applies to Agpawa in his official capacity. (*See* Opp'n at 15 n.4.) Suits against government officials in their official capacity are treated as suits against the government entity itself. *See Walker*, 526 F.3d at 977. Because Count XIII already names Markham as a Defendant, the Court dismisses Count XIII as duplicative to the extent Plaintiffs purport to assert it against Agpawa.

liquor license. (*Id.* ¶¶ 82–83.) And they contend that harassment and citations issued by Markham police officers deprived them of the right to make commercial speech. (*Id.* ¶ 84.) Plaintiffs included more detailed allegations about the relevant speech in Count XIII, however. In that count, they allege that Markham police officers shut down Olympian's club before 2:00 a.m. and made Olympian turn over its business license. (*Id.* ¶¶ 138–145.) In Olympian's telling, Markham shut down Olympian's operations on that occasion because the City did not want a "strip club" like Encore in town. (*Id.* ¶¶ 149–150.) While Olympian does not clearly identify the nature or content of the entertainment at its nightclub, the Court makes the reasonable inference that the entertainment includes nudity or sexually suggestive content in some form. Agpawa placed restrictions on Olympian's license and imposed a $500 fine. (*Id.* ¶ 152.) Plaintiffs allege that Markham's actions in regard to Olympian's business license were based on the content of speech at Olympian's nightclub. (*Id.* ¶ 158.)

The Court dismisses Count III. Under the pleading standard of Federal Rule of Civil Procedure 8(a), Plaintiffs have an obligation to give Defendants notice of the nature of the claims against them. *Bell Atl. Corp.*, 550 U.S. at 555. Yet the allegations in Count III fail to identify what speech Defendants are allegedly restricting. The allegations mention interference with a lawful business and costs incurred in reliance on a license. But beside a conclusory reference to the idea of commercial speech, Plaintiffs have failed to provide Defendants with notice of what speech they are restricting and how they are restricting it. Therefore, Plaintiffs have not met the requirements of notice pleading on Count III.

For Count XIII, there is a closer connection between the speech at issue—some form of adult entertainment—and government action in regard to Olympian's business license. The essence of this claim appears to be that Markham is punishing Olympian, or at least treating it

differently, because of the type of entertainment at its nightclub. That suffices to state a § 1983 claim for retaliation against the exercise of the right to free speech.[11] To make out a *prima facie* case of First Amendment retaliation, a plaintiff must allege that "(1) it engaged in activity protected by the First Amendment, (2) it suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotation marks omitted). Plaintiffs have alleged that they engaged in protected speech by hosting some form of nude entertainment at their nightclub. *See Schultz v. City of Cumberland*, 228 F.3d 831, 839 (7th Cir. 2000) ("[I]t is now well-established that erotic dancing . . . enjoys constitutional protection as expressive conduct."). They have alleged that they suffered a deprivation—a temporary revocation of their business license followed by restrictions on that license and a monetary fine—that would likely deter future protected speech. And they have alleged that hostility to their speech was at least a motivating factor in the retaliatory actions.[12] Count XIII therefore survives Defendants' motions to dismiss.[13]

---

[11] Plaintiffs' response in opposition to the motions to dismiss does not focus on the retaliation issue. They focus, instead, on prior restraints and commercial speech. But because Plaintiffs have stated a claim on the theory of retaliation, Count XIII may proceed and the Court need not rule on whether Plaintiffs have stated a claim under a theory of prior restraints or commercial speech.

[12] After the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), there was some confusion about whether a but-for standard or a motivating-factor standard was the proper standard of causation in First Amendment retaliation cases. *See, e.g.*, *Collins-Bey v. Hulick*, No. 3:09-cv-00921-JPG-PMF, 2011 WL 2116456, at *2 (S.D. Ill. May 2, 2011). But the Seventh Circuit has held that district courts should still use a motivating-factor standard. *See Smith v. Wilson*, 705 F.3d 674, 681-82 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011). Either way, it does not affect the outcome because Plaintiffs have adequately pleaded that bias against the content of its entertainment was the but-for cause of Markham's retaliatory acts.

[13] To prevail on this claim, Plaintiffs will, of course, have to demonstrate that Markham deprived them of their rights through a policy, practice, or custom that it maintained. *See Monell*, 436 U.S. at 694. But in the briefs supporting its motion to dismiss, Markham never raised an issue related to *Monell* on Count XIII, so the Court need not address it. And in any case, Plaintiffs have sufficiently pleaded that Markham is liable

## VI.     Fourth Amendment Claim (Count IV)

Count IV raises a § 1983 claim alleging that all individual Defendants violated Plaintiffs'
Fourth Amendment rights by "willfully and wantonly search[ing] Olympian and seiz[ing] its
property." (SAC ¶ 88.) The count itself contains no further detail about alleged Fourth
Amendment violations, and the allegations elsewhere in the SAC do not clearly describe any
searches or seizures. While Plaintiffs allege that Markham police officers entered Olympian's
nightclub on numerous occasions and issued citations to Olympian, there are no allegations that
officers ever seized any money or other property from the nightclub. Moreover, the descriptions
of the officers' visits to the nightclub do not include any searches. Even construing the SAC in
Plaintiffs' favor, all the Court can infer is that officers entered the nightclub while it was open to
the public and observed what was in plain view. Therefore, the only allegation supporting the
Fourth Amendment claim is the conclusory allegation that officers searched Olympian and seized
its property. Plaintiffs cannot state a claim with that conclusory allegation alone. *See Iqbal*, 556
U.S. at 681. Therefore, the Court dismisses Count IV.

## VII.    *Monell* Claims (Counts VI and VII)

Count VI is a *Monell* claim that seeks to hold Markham liable for one or more of the
§ 1983 claims against Markham officials and police officers. Count VII requests declaratory and
injunctive relief against Markham. Count VII is, in effect, an extension of Count VI because it
requests equitable relief for the same violations of Plaintiffs' rights that are covered by the *Monell*
claim in Count VI.

A municipality cannot be held liable under § 1983 for the conduct of its employees based
on a theory of *respondeat superior*. *Monell*, 436 U.S. at 694. Instead, a policy, practice, or custom

---

because Agpawa, the final policymaker on liquor licenses in Markham, was the cause of Plaintiffs' injury.
*See Kujawski v. Bd. of Comm'rs of Bartholomew Cty.*, 183 F.3d 734, 737 (7th Cir. 1999).

of the municipality must have caused the violation of the plaintiff's rights. *Id.* Plausible allegations of a specific policy, practice, or custom are indispensable to stating a *Monell* claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiffs here, however, have not clearly identified for which constitutional violations they seek to hold Markham accountable. At the motion to dismiss stage, the Court reads the SAC to cover all § 1983 claims against individual Defendants. Thus, the Court will examine *Monell* claims for the constitutional violations in Counts I through IV.

A plaintiff may show that a municipality is responsible for the unconstitutional conduct of its employees in one of three ways: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Kujawski*, 183 F.3d at 737. The Court concludes that Counts VI and VII fail to state a claim for any of the constitutional violations in Counts I through IV. Therefore, the Court dismisses the *Monell* claims related to Counts III and IV. Without stating a claim for an underlying constitutional violation on Counts III and IV, Plaintiffs cannot state a *Monell* claim against Markham. *See Palka v. Shelton*, 623 F.3d 447, 455 (7th Cir. 2010).

Plaintiffs have stated a claim for the constitutional violations alleged Counts I and II. But the Court nonetheless concludes that they have failed to state a *Monell* claim based on those violations. For the procedural due process and equal protection violations, Plaintiffs claim that Markham had a policy or custom of harassing businesses in Markham and that final policymakers in Markham were responsible for the violations of Plaintiffs' rights.[14] But Plaintiffs have

---

[14] It stands to reason that a plaintiff may state a *Monell* claim against a municipality on a class-of-one equal protection claim if a final policymaker in that municipality caused the harm. *See, e.g.*, *Lovette-Cephus v. Vill. of Park Forest*, 587 F. App'x 983, 984 (7th Cir. 2014) (unpublished). But the Court could not locate binding authority to the effect that a policy or practice *Monell* claim is possible for a class-of-one equal protection violation, and courts in this District are split on the question. *Compare Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007) (holding that a policy or practice Monell

presented only conclusory allegations for both theories. *See McCauley*, 671 F.3d at 616. For both

their due process and equal protection claims, Plaintiffs offer only the conclusory allegation that

Markham had a policy or practice that caused the violations. They reference the harassment of

other businesses, but there are no well-pleaded facts in the SAC about the harassment of any other

businesses. Thus, Plaintiffs have failed to offer facts from which the Court can draw a reasonable

inference about the existence of a policy or practice. Moreover, Plaintiffs have only offered the

conclusory allegation that all the individual Defendants were final policymakers. This allegation

is so broad and vague that the Court cannot make a reasonable inference about which Defendants,

if any, were allegedly final policymakers with regard to the violations of Plaintiffs' rights or how

those Defendants were involved. Therefore, the Court dismisses the *Monell* claims that pertain to

the constitutional violations in Counts III and IV.

### VIII.  State Law Claims (Counts VIII, XI, XII)

Counts VIII, XI, and XII assert Illinois common law claims for conversion, extortion, and

trespass to land.[15] Because neither party has raised a choice-of-law issue, the Court applies the

substantive law of Illinois in considering all three claims. *See Wood v. Mid-Valley Inc.*, 942 F.2d

425, 427 (7th Cir. 1991). The Court addresses each in turn.[16]

---

claim is not possible for a class-of-one equal protection violation), *with Murphy v. County of McHenry*,
No. 02 C 50283, 2003 WL 1908045, at *1 (N.D. Ill. Apr. 18, 2003) (holding that a policy or practice
*Monell* claim is possible for a class-of-one equal protection violation), *and Anderson v. Village of Oswego*,
109 F. Supp. 2d 930, 935 (N.D. Ill. 2000) (same). For present purposes, the Court will assume without
deciding that Plaintiffs can state a *Monell* claim against Markham on both the basis of a policy or practice
and the basis of decisions by final policymakers.

[15] Defendants contend that Markham, Walker, and Sanders are immune to Plaintiffs' state-law claims
because of the Illinois Local Governmental and Governmental Employees Tort Immunity Act. *See* 745
ILCS 10/2-109, 10/2-201, 10/2-210. But because, none of Plaintiffs' state-law claims survive Defendants'
motions to dismiss on their merits, as described below, the Court declines to consider whether the
immunity conferred by that statute shields any Defendant from liability.

[16] Defendants have asked the Court to decline to exercise supplemental jurisdiction over the state-law
claims if it dismissed all federal-law claims. *See* 28 U.S.C. § 1367(c). But since several federal-law claims

### A.    Conversion

Count VIII alleges that Markham and Webb unlawfully converted Plaintiffs' property. (SAC ¶¶ 112–18.) The claim appears to allege that those Defendants took temporary unauthorized control over Plaintiffs' real property through police actions on several occasions and unlawfully converted about $30,000 that Markham claimed that Olympian owed on citations.

To prevail on a conversion claim under Illinois law, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *In re Karavidas*, 999 N.E.2d 296, 310 (Ill. 2013) (internal quotation marks omitted). To the extent Plaintiffs'' conversion claim concerns real property, it fails to state a claim because the allegation that Defendants took unauthorized control over that property is conclusory and not supported by the facts alleged in the SAC.

The claim also fails to the extent it concerns the money Olympian paid in fines to Markham. Under Illinois state law and Markham's local ordinance, Markham had authority to set fines for violations of its liquor and business licenses ordinances and to levy those fines on businesses that violated their licenses. As alleged in the SAC, all the money Olympian paid Markham was for fines levied under local licensing ordinances. Perhaps the fines were issued without a factual predicate or on false pretenses. If so, that could have been a basis for appealing the citations through a state or local process. But it does not change the fact that Markham had lawful authority to issue citations, levy fines on Olympian, and demand payment of those fines.

---

survive Defendants' motion to dismiss, the Court will continue to exercise supplemental jurisdiction over the state-law claims.

Therefore, Markham had authority to assume control of the money that Olympian paid Markham in fines. The Court dismisses Count VIII.

### B.     Extortion

In Count XI, Plaintiffs assert a claim against the individual Defendants for extortion. (*See* SAC ¶¶ 126–131.) Plaintiffs state that 720 ILCS 5/12-6(a) provides the basis for their extortion claim. (*See id.* ¶ 127.) But 720 ILCS 5/12 is a criminal statute not providing for a private cause of action. And this Court has not identified a state law claim for extortion under which the facts pled by Plaintiffs would state a claim for relief. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1297 (7th Cir. 1992) (finding that Illinois does not recognize a tort for economic duress). Accordingly, this Court dismisses Count XI.

### C.     Trespass to Land

In Count XII, Plaintiffs allege that all individual Defendants committed the common-law tort of trespass to land. Specifically, Plaintiffs allege that the Markham Police Department has "entered and stayed, or alternatively, caused its agents to enter and stay, on Plaintiffs' land without Plaintiffs' authorization." (SAC ¶ 134.) Plaintiffs go on to describe Defendants' conduct as knowing interference with Plaintiffs' right of possession. (*Id.* ¶ 135.)

Illinois law imposes tort liability for trespasses on real property. *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (Ill. 1980). To state a claim for trespass to land, a plaintiff must allege that a defendant intentionally intruded on, or caused another to intrude on, the plaintiff's real property without authorization and in a manner that wrongfully interferes with the plaintiff's possessory rights. *See id.*; *Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. Ct. 1987). But according to the allegations in the SAC, police officers entered the nightclub while they were on duty, saw what was in plain view, and issued citations. This case similar to one in which the Illinois Appellate

Court held that a plaintiff failed to state a claim for trespass against a police officer who parked his car on plaintiff's property because there were no allegations that the officer was off duty, that he was acting outside the scope of his authority, or that he lacked probable cause to enter the plaintiff's property. *See Loftus*, 511 N.E.2d at 210. Without allegations that he was acting without authority, the court considered the police officer's entry onto the property privileged. *Id.* In this case, there are no allegations that the Markham officers were off duty or that they exceeded their authority. No warrant or probable cause was required to enter a business open to the public and Plaintiffs never contend that Defendants unlawfully entered Olympian's nightclub. Therefore, Plaintiffs have failed to state a claim for trespass to land, an element of which is that Defendants acted without authority.

### IX.     Other Affirmative Defenses

In addition to those addressed in the preceding sections, Defendants assert the following additional affirmative defenses: that Plaintiffs' claims are barred by the statute of limitations; that the claims are not ripe for adjudication; that the Court should decline to consider Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine and due to Plaintiffs' failure to exhaust their state-court remedies; and that Defendants are immune to punitive damages. The Court considers these arguments in turn.

#### A.     Statute of Limitations

Plaintiffs allege that they have received a series of fraudulent citations going back to January 2013. But Defendants contend that Plaintiffs cannot base their claims on events that took place before July 18, 2016 because of the two-year statute of limitations for § 1983 claims. The limitations period for § 1983 claims is the same the limitations period for personal injury claims in the state where the violation of constitutional rights occurred. *See Savory v. Lyons*, 469 F.3d 667,

672 (7th Cir. 2006). In Illinois, that period is two years, so the limitations period for Plaintiffs'
§ 1983 claims is also two years. 735 ILCS 5/13-202. Plaintiffs filed their initial complaint in this
case on July 18, 2018, so Defendants are correct that events more than two years before that date
would normally be beyond the statute of limitations.

Plaintiffs contend that any events that took place beyond the limitations are part of a
continuing series of violations for which the Court should toll the statute of limitations. Federal
law—not state law—governs when a cause of action for a § 1983 claim accrues. *See Savory*, 469
F.3d at 672. And under the doctrine of continuing violations, events that occurred beyond the
limitations period may form part of a cause of action if "the plaintiff could not reasonably be
expected to perceive the alleged violation before the limitations period has run, or when the
violation only becomes apparent in light of later events." *Id.*

A complaint typically does not need to address affirmative defenses. *Brooks v. Ross*, 578
F.3d 574, 579 (7th Cir. 2009). But a defendant may move to dismiss based on the statute of
limitations if "the allegations of the complaint itself set forth everything necessary to satisfy the
affirmative defense." *Id.* (internal quotation marks omitted). In this case, however, it would be
inappropriate to address the statute of limitations on Defendants' motions to dismiss because
Plaintiffs' SAC does not set forth everything necessary to determine if events beyond the
limitations period are part of a continuing violation. *See id.* (holding that it was appropriate for the
district court to dismiss claims based on the statute of limitations because the relevant events
occurred beyond the limitations period and "[i]t is also clear that the continuing tort rule does not
apply"). Aside from a single allegation concerning citations received as far back as January 2013
(SAC ¶ 30), the SAC does not explain what actions Defendants took beyond the limitations period
that they might be relying upon as the basis for a claim. The Court thus cannot determine if

Plaintiffs could not reasonably have been expected to perceive an alleged violation that occurred more than two years before they filed suit or if the violation only became apparent in light of later events. The Court therefore declines to rule on whether the statute of limitations bars any of Plaintiffs' claims.

### B. Ripeness

Defendants contend that none of Plaintiffs' claims are ripe for adjudication. "Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). Ripeness has both a jurisdictional component and a prudential component. *See id.* The Supreme Court has developed a two-part test for evaluating ripeness in which this Court, "must first weigh the fitness of the issues for judicial decision. . . [and] then evaluate the hardship to the parties of withholding court consideration." *Id*. (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Defendants' argument on ripeness is that Plaintiffs' claims stem from the liquor and business licenses that Markham has issued to Olympian and about which there are, according to Defendants, pending proceedings before Markham.

The Court rejects Defendants' arguments for two reasons. First, this Court lacks sufficient information about the present state of administrative proceedings regarding Olympians' licenses to make the sort of conclusions on a motion to dismiss that Defendants urge. Second, even if there are ongoing administrative proceedings, Plaintiffs' claims do not arise from the dispute about which licenses Plaintiffs had and whether those licenses should be revoked or restricted. Rather, Counts I, II, III, and XIII arise from citations that Olympian received in a manner that allegedly violated their due process, equal protection, and free speech rights. Counts IV and XII arise from police actions in unlawfully entering Olympian's property and unlawfully conducting searches

and seizures. Counts VI and VII are *Monell* claims that arise from Counts I through IV. And Counts VIII and X arise from Markham's demands that Olympian pay fines deriving from citations that it had received. All of those claims arose before any proceedings that are pending now, and none of them are dependent on administrative proceedings about what licenses Olympian has and whether Olympian should keep those licenses. Even if Markham revokes Olympian's licenses, Plaintiffs would not be precluded from prosecuting the claims in their SAC. The claims are therefore fit for a judicial decision and it would impose an unjust hardship on Olympian for this Court to withhold its consideration of Olympian's claims. The Court thus concludes that Olympian's claims are ripe for its consideration.

### C. *Rooker–Feldman* Doctrine

Defendants contend that this Court lacks subject-matter jurisdiction over Plaintiffs' claims because the claims are, in essence, appeals of Markham's administrative decision to temporarily suspend (and then reinstate with conditions) Olympian's liquor license and of a TRO entered in state court in December 2017. The *Rooker–Feldman* doctrine forbids lower federal courts from reviewing orders issued by state courts. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997) (citing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)). To the extent Defendants' argument concerns an administrative decision made by the City of Markham, however, the *Rooker–Feldman* doctrine does not bar the suit because it does not apply to state administrative proceedings. *Id.* at 1348–49. And to the extent that Defendants' argument concerns a TRO entered in state court, Defendants have failed to provide the Court with the information necessary to rule—the TRO is not described in the SAC and no documents about it are attached to the motion to dismiss. Defendants do not even identify the name and docket number of the case to which they are referring. On its face, the

29

SAC does not appear to seek review of any state-court orders. And without further information about the state-court proceedings, the Court cannot determine whether Plaintiffs are, in fact, seeking review of a state-court order. The Court concludes that, based on the information before it, the *Rooker–Feldman* doctrine does not deprive it of subject-matter jurisdiction over any of Plaintiffs' claims.

### D.     Exhaustion

Defendants contend that Plaintiffs have failed to exhaust remedies available to them under state law. Defendants' exhaustion arguments regarding Plaintiffs' due process claims have been addressed above. And because this Court dismisses Count VII and Plaintiffs' state law claims, the Court will not address Defendants' exhaustion arguments regarding those claims at this time.

### E.     Immunity to Punitive Damages

Defendants contend that Plaintiffs' § 1983 claims against Markham and § 1983 claims against other Defendants in their official capacity should be dismissed to the extent they seek punitive damages. In a § 1983 case, municipalities and government officials sued in their official capacities are immune from punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (municipalities); *Hill v. Shelander*, 924 F.2d 1370, 1372–73 (7th Cir. 1991) (officials sued in their official capacities). That immunity can be waived by federal or state law. *See Hill*, 924 F.3d at 1373. But Plaintiffs have not responded to Defendants' argument or made any argument that federal or state law has waived the immunity. That failure to respond results in a waiver of any argument Plaintiffs could make. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (collecting cases). Therefore, the Court dismisses all claims for punitive damages for § 1983 claims against Markham and Defendants sued in their official capacities.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants'
motions to dismiss. (Dkt. Nos. 57, 63.) The Court dismisses Counts III, IV, V, VI, VII, VIII, X,
XI and XII without prejudice. The Court also dismisses Counts I and II as asserted against
Defendants Agpawa, Miller, Jones, and Barron without prejudice. The Court dismisses Count XIII
against MLCC with prejudice and against Agpawa without prejudice. The motions are otherwise
denied as to Counts I, II, and XIII. Finally, the Court dismissed all claims asserted by Plaintiffs
Bradford and Irvin without prejudice.

ENTERED:

Dated:  September 30, 2020

Andrea R. Wood
United States District Judge